Elmer GERTZ, Plaintiff,

v.

ROBERT WELCH, INC., Defendant.

No. 69 C 1288.

United States District Court,
N. D. Illinois, E. D.

Dec. 8, 1970.

**998**

Wayne B. Giampietro, Chicago, Ill., for plaintiff.

James A. Boyle, Jr., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

DECKER, District Judge.

In this motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, defendant Robert Welch, Inc. seeks to reverse the verdict of a jury which found him responsible for the libel *per se*[1] of plaintiff Elmer Gertz. Damages of $50,000 were awarded.

The libel was published as the lead article in the defendant's monthly magazine *American Opinion* under the title "Frame-Up" with a sub-title "Richard Nuccio and the War on Police". Reprints of the article were made available immediately and were widely circulated. Nuccio was a Chicago policeman who was charged with the murder of Ronald Nelson, and the article dealt with Nuccio's murder trial and subsequent conviction. Gertz, an attorney, had been retained by the Nelson family. He represented them at the deceased's inquest, and he filed suit in their behalf in federal court. At page 12 of the 19 page article Gertz is labeled a "Leninist * * * who now turns up as lawyer for the Nelsons," and at page 17 he is described as a "Communist fronter".

One of the principal defenses at trial, and the basis for this motion, was that Gertz was a "public official" within the meaning of New York Times Co. v. Sullivan, 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), or more properly, that he was a "public figure" within the meaning of Curtis Publishing Co. v. Butts, 388 U.S. 130, 153–155, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), thus precluding a recovery of damages for a defamatory falsehood unless actual malice is shown. In denying cross motions for summary judgment, the court refused to hold as a matter of law that defendant had published with actual malice. Memorandum Opinion of September 16, 1970. Instead, factual issues raised in the affidavits required that the matter be submitted to a jury. F. R.Civ.P. 56(c).

At trial, Gertz testified as to his stature and reputation in the community. He is a prominent attorney in Chicago, having represented clients who sometimes command a wide following in the press and media. He has written books, articles and reviews which have enjoyed wide circulation. He has appeared frequently on radio and television, and has delivered numerous speeches. And he has long been involved in civic affairs.

Despite the above, the court held, in effect, that Gertz was not a public figure. In instructing the jury, the court determined that the publication in question was libelous *per se*. All issues were withdrawn from the jury except the proper measure of damages.

A closer examination of the article shows that its theme was more general and far reaching than just the trial of one Chicago policeman for murder. Instead, it painted the picture of a conspiratorial war being waged by the Communists against the police in general.[2] Caught up in the web of the alleged conspiracy, aside from Gertz, was such a disparate cast of characters as the Lake View Citizens Council, the Walker Report, a Roman Catholic priest, and the Chicago *Seed* (an underground newspaper). In fact, although Gertz's picture was displayed in the body of the article, he did not play a very prominent role in the article's exposé of the purported war on police.

---

1. In denying defendant's motion to dismiss, it was held that the complaint sufficiently averred a libel *per se* under Illinois law, and not merely a libel *per quod*. Gertz v. Robert Welch, Inc., 306 F.Supp. 310 (N.D.Ill.1969).

2. Immediately following the reprint of the article is a list of additional readings on the subject of the war against police, published by defendant. One of the items is entitled "The Communist Attack On The U. S. Police."

At trial, Scott Stanley, Jr., the Managing Editor of *American Opinion,* testified that he had commissioned Alan Stang, a free-lance writer, to write the article. Stang had written for defendant in the past, and Stanley had always found him accurate. Stanley had never had cause to question the contents of any article that Stang had written, and to his knowledge there had not been any lawsuits arising out of Stang's articles. Relying on what he observed to be Stang's past history of accuracy, Stanley did not check the accuracy of "Frame-Up" personally.[3] While it may be that the failure to check the accuracy of the article was negligent, Stanley clearly did not act with actual malice or with reckless disregard for the truth. See New York Times Co. v. Sullivan, 376 U.S. at 287–288, 84 S.Ct. 710, 11 L.Ed.2d 686.

Plaintiff having failed to establish actual malice on the part of defendant, the issue presented in this motion is whether the court properly concluded that Gertz was not a public figure. If the conclusion was proper, then the award of $50,000 by the jury was not constitutionally impermissible. However, if the court erred in holding that Gertz was not a public figure, then under the rule in New York Times Co. v. Sullivan, *supra* at 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686, and Curtis Publishing Co. v. Butts, *supra,* 388 U.S. at 155, 87 S.Ct. 1975, 18 L.Ed.2d 1094, the article would be privileged under the First and Fourteenth Amendments, and the award of damages therefor would have been improper.

The issue is not as simple, of course, as the question of whether Gertz is a public figure. The penumbra of material protected by the guarantee of freedom of speech has been extended to include matters of public interest, whether or not public officials or public figures are involved.

"One need only pick up any newspaper or magazine to comprehend the vast range of published matter which exposes persons to public view, both private citizens and public officials. Exposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press." Time, Inc. v. Hill, 385 U.S. 374, 388, 87 S.Ct. 534, 542, 17 L.Ed.2d 456 (1967).

■ The rationale for affording First Amendment protection to matters of public interest, as implied by *Hill, supra,* is that our system of government places great value on society's open discussion of not only public officials (*Sullivan*) and public figures (*Butts*), but also matters of public interest (*Hill*). A person allegedly defamed by matter pertaining to the public interest must satisfy a heavy burden, i. e. a showing of actual malice, in order to recover therefor. The rationale of Time, Inc. v. Hill has been applied to several decisions of the Courts of Appeal recently, all of which extend the guarantee of free speech to matters of public interest.

For instance, a private individual's arrest for the sale of allegedly obscene material has been held to be a matter of public interest. Rosenbloom v. Metromedia, Inc., 415 F.2d 892, 894–896 (3d Cir. 1969), cert. granted, 397 U.S. 904, 90 S.Ct. 917, 25 L.Ed.2d 85 (1970). A picture of a lawyer eating lunch with reputed gangsters has been found to be of public interest. Wasserman v. Time, Inc., 424 F.2d 920, 922 (D.C.Cir.1970), cert. denied, 398 U.S. 940, 90 S.Ct. 1844, 26 L.Ed.2d 273 (1970); Time, Inc. v. Ragano, 427 F.2d 219, 221 (5th Cir. 1970). To the same effect are stories concerning the administration of public health, United Medical Laboratories, Inc. v. Columbia Broadcasting System, 404 F.2d 706, 711–712 (9th Cir. 1968), cert. denied, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969), and the influence of a reputed gambler in the election of

3. He had never heard of Gertz prior to reading the article, and had no reason to doubt the veracity of what Stang wrote about Gertz.

the premier of the Bahamas, Time, Inc. v. McLaney, 406 F.2d 565, 573 (5th Cir. 1969), cert. denied, 395 U.S. 922, 89 S. Ct. 1776, 23 L.Ed.2d 239 (1969). Finally, it has been held that the condition of a hotel serving guests at a national golf tournament is a matter of public interest. Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 860–862 (5th Cir. 1970). See also, Farnsworth v. Tribune Co., 43 Ill.2d 286, 290–292, 253 N.E.2d 408 (1969).

■ By analogy to the above cases, and to those cited in Bon Air Hotel, Inc. v. Time, Inc., *supra*, 426 F.2d at 861, n. 4, I think that the subject matter of "Frame-Up" was clearly one of public interest protected by the First and Fourteenth Amendments. A Chicago policeman's killing of a criminal suspect, and the policeman's subsequent indictment for murder at a time when the police generally were the subject of attacks within the community, commanded wide public attention and interest. By representing the victim's family in litigation brought against the policeman, Gertz thrust himself into the vortex of this important public controversy. Curtis Publishing Co. v. Butts, *supra*, 388 U.S., at 155, 87 S.Ct. 1975, 18 L.Ed.2d 1094. In affording First Amendment protection to defendant's publication, I reiterate that Gertz played a small part in the vast sweep of the whole article. What this court concerns itself with primarily is the public's right to become informed on a matter of public interest, rather than with any right to know about persons who have injected themselves into the limelight on that matter. See United Medical Laboratories v. Columbia Broadcasting System, *supra*, 404 F.2d at 712. The penumbra of First Amendment protection falls equally on references to Gertz, the Lake View Citizens Council, the policeman charged with murder, and the Chicago *Seed*.

■■ Having already concluded that there was not sufficient evidence presented at trial to support a finding of actual malice or reckless disregard for the truth, judgment notwithstanding the verdict should be entered for the defendant. New York Times Co. v. Sullivan, 376 U.S. at 286–288, 84 S.Ct. 710, 11 L.Ed.2d 686; F.R.Civ.P. § 50(b). The motion for a new trial is conditionally denied, since no jury could reasonably find that defendant acted with actual malice. F.R.Civ.P. § 50(c); *cf.* Neely v. Martin K. Eby Construction Co., 386 U.S. 317, 322, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967), reh. denied, 386 U.S. 1027, 87 S.Ct. 1366, 18 L.Ed.2d 471 (1967).

Accordingly, the verdict for plaintiff is set aside and defendant's motion for judgment notwithstanding the verdict is granted. F.R.Civ.P. § 50(b).