(No. 47429.—

MARY TROMAN, Appellant, v. KINGSLEY WOOD *et al.*—(Field Enterprises, Inc., Appellee.)

*Opinion filed Nov. 25, 1975.—Rehearing denied Jan. 22, 1976.*

CREBS, J., took no part.

George C. Pontikes, Irving M. Funk, and Foss, Schuman & Drake, all of Chicago, for appellant.

A. Daniel Feldman, C. Richard Johnson and James N. Nowacki, all of Chicago (Isham, Lincoln & Beale, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Mary Troman, filed this action in the circuit court of Cook County to recover actual damages from Kingsley Wood, a reporter for the Chicago Sun-Times, and Field Enterprises, Inc., the publisher of that newspaper. The complaint alleged that the plaintiff suffered injury to her reputation caused by the publication of an article in the Chicago Sun-Times on August 26, 1973. Although the article appeared over the by-line of Wood, he was dismissed from the case pursuant to a stipulation

between the other parties, and the sole defendant is Field Enterprises, Inc.

The defendant's motion to dismiss the complaint was granted, and we have transferred the plaintiff's appeal to this court under Rule 302(b).

The newspaper article related to a series of burglaries and other criminal activites by a gang of youths operating in an area on the northwest side of Chicago, and to actions taken by a local community group to counteract the gang's activities by encouraging witnesses and victims of crimes to sign complaints and to attend the ensuing court proceedings.

In the course of the article one local resident was quoted as stating to the reporter, "Ten years ago, I became very friendly with the family that moved into what became the gang headquarters." A second resident was quoted as stating, "The gang stole us blind. One time after my husband had paid them for painting and stripping his basement, he returned home to find one TV set gone. You know where it was? It was in the basement of the gang house."

Although it had not appeared in earlier editions of the paper, in one edition the article carried a photograph of a house which bore the following caption: "Home of Mrs. Mary Troman at 5832 N. Wayne. Thomas Troman testified that he is a member of the gang." The article did not specify the relationship of Thomas Troman to the plaintiff, nor did either the article or the caption expressly identify plaintiff's home as the location of gang headquarters. The complaint alleged, however, that the article and the picture, taken together, were understood by readers as meaning that the plaintiff's home served as headquarters for the gang, and that the plaintiff was in some manner associated with the gang.

The central issue on this appeal concerns the standard of liability which should be imposed for libel in the light of the recent decision of the Supreme Court of the United

States in *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997. Before taking up that issue, however, we consider the claim, advanced as one ground of defendant's motion to dismiss, that the article was not "of and concerning" the plaintiff.

In our opinion the reference to the plaintiff by name and the photograph of a house identified as her residence compel the rejection of defendant's contention. Unlike *John v. Tribune Co.* (1962), 24 Ill.2d 437, no question arises here as to the identity of the person referred to by the article. Whether the article was in fact understood by readers to refer to the plaintiff might ultimately be a question for the jury, should there be controversy on that matter. But the preliminary determination whether the article is capable of being so understood is a question of law which must, upon the motion to dismiss in this case, be resolved in favor of the plaintiff. (*Cf. Ogren v. Rockford Star Printing Co.* (1919), 288 Ill. 405, 413-414; Restatement of Torts, Second, Tentative Draft No. 21, April 5, 1975, sec. 613(1)(c), Comment d.) We reach the same conclusion with respect to defendant's claim that the article is not defamatory of the plaintiff. If the article were read as meaning that the plaintiff allowed her house to be used as a headquarters for persons engaging in criminal acts or for storage of stolen goods, it can hardly be doubted that her reputation would be injured. Whether the article was in fact so understood is a question which must await the presentation of evidence.

We reach, then, the question whether the complaint states a cause of action for defamation in the light of the applicable constitutional limitations laid down by the Supreme Court. Prior to *New York Times Co. v. Sullivan,* 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, decided in 1964, a defamatory publication concerning another rendered its publisher liable, under common law principles, on a basis of strict liability. Neither lack of malicious intent nor the absence of negligence on defendant's part consti-

tuted a defense. See Restatement of Torts (1938), sec. 580; Prosser, Law of Torts, sec. 113 (4th ed. 1971).

In the *New York Times* case, however, the Supreme Court held that the freedom of the press guaranteed by the first amendment to the Federal Constitution "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 279-280, 11 L. Ed. 2d at 706, 84 S. Ct. at 726.

Later decisions extended this requirement of proof of actual malice to suits for defamation brought by persons who were candidates for public office and to statements which might not relate to official conduct but did relate to fitness for office (*St. Amant v. Thompson* (1968), 390 U.S. 727, 20 L. Ed. 2d 262, 88 S. Ct. 1323; *Monitor Patriot Co. v. Roy* (1971), 401 U.S. 265, 28 L. Ed. 2d 35, 91 S. Ct. 621; *Ocala Star-Banner Co. v. Damron* (1971), 401 U.S. 295, 28 L. Ed. 2d 57, 91 S. Ct. 628), and to suits by persons, who, although neither officials nor candidates, were in some sense "public figures." (*Curtis Publishing Co. v. Butts* and *Associated Press v. Walker* (1967), 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975.) Finally, in *Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 29 L. Ed. 2d 296, 91 S. Ct. 1811, a three-man plurality of the Supreme Court took the further step of applying the *New York Times* standard to suits brought by private persons who were neither public officials nor public figures, so long as the defamatory statement was made in the course of a report about matters of general or public interest in which the plaintiff had become involved.

*New York Times Co. v. Sullivan, Curtis Publishing Co. v. Butts,* and other decisions of the court also made it clear that the "reckless disregard" variant of actual malice meant more than a failure to investigate, and required "sufficient evidence to permit the conclusion that the

defendant in fact entertained serious doubts as to the truth of his publication." (See *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323.) In the course of its decisions, moreover, the court has described the burden on the plaintiff of proving actual malice in very stringent terms, stating that proof of actual malice must be made "with convincing clarity" (*Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 55, 29 L. Ed. 2d 296, 318, 91 S. Ct. 1811), a standard which seemingly is more rigorous than the usual one of a preponderance of the evidence. See *Gibson v. Maloney* (Fla. App. 1972), 263 So. 2d 632, 636, *cert. denied* (1975), 410 U.S. 984, 36 L. Ed. 2d 180, 93 S. Ct. 1505.

Thus matters stood when *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997, reached the court. Elmer Gertz, the plaintiff, is an attorney who was representing in civil litigation the family of a youth who had been killed by a policeman. Subsequently, the policeman had been convicted of the murder of the youth. The defendant was the publisher of a journal in which there had appeared an article containing various false and defamatory statements about Gertz, including one that he was a "Communist-Fronter," and another that the prosecution of the police officer had been a "frame-up" of which Gertz had been the architect.

Gertz filed a diversity action for libel in the United States District Court for the Northern District of Illinois. The jury returned a verdict in his favor in the amount of $50,000, but the trial judge entered a judgment *n.o.v.* for defendant. (322 F. Supp. 997 (N.D. Ill. 1970).) The Court of Appeals for the Seventh Circuit did not disagree with the district court's determination that the plaintiff was not a public figure, but it concluded on the basis of *Rosenbloom v. Metromedia, Inc.,* that the *New York Times* standard was applicable, because the article in which the defamatory statements appeared concerned an issue of public interest. It therefore affirmed the judgment for the

defendant. 471 F.2d 801 (7th Cir. 1972).

In reversing the Court of Appeals, the Supreme Court retreated from the position taken by the plurality in the *Rosenbloom* case. While ·adhering to its position that recovery of damages for defamatory publications concerning public officials and public figures would require proof of actual malice, the court held that the States were free to impose liability on some less rigorous basis where the plaintiff was a private individual and where the defamatory statement in question was such that it made a substantial danger to reputation apparent. The court expressly reserved judgment as to a situation where a State "purported to condition civil liability on a factual misstatement whose content did not warn a reasonably prudent editor or broadcaster of its defamatory potential." 418 U.S. at 348, 41 L. Ed. 2d at 810, 94 S. Ct. at 3011.

The extent to which liability could be imposed was made subject to the provisos that liability could not be imposed without fault, and that recovery of punitive damages could not be allowed. Recovery must be limited to compensation for actual injury suffered, but damages could include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering" to the extent that those elements were supported by competent evidence. Only if liability was predicated on actual malice could punitive damages be awarded or actual damages be presumed. 418 U.S. at 346-351, 41 L. Ed. 2d at 809-811, 94 S. Ct. at 3010-12.

The opinion in *Gertz* rejected the proposition advanced in *Rosenbloom* that actual malice must be proved even as to a defamatory falsehood about a private individual, if the statement related to matters which a court deemed of public or general interest. (418 U.S. at 346, 41 L. Ed. 2d at 809.) The opinion recognized "the legitimate strength of the state interest in compensating private individuals for wrongful injury to reputation," and it acknowledged that in the nature of things there would

always be some conflict between that interest and "the need for a vigorous and uninhibited press." (418 U.S. at 342, 41 L. Ed. 2d at 806, 94 S. Ct. at 3008.) But the court saw two significant differences between public officials and public figures, on the one hand, and private individuals, on the other, which justified a different standard of liability. The first was that a private individual was more vulnerable to injury, in that he enjoyed less ready access to channels of communication for effective rebuttal. The second was that the private individual, unlike the public official (and, ordinarily, the public figure) had not by his own actions invited or assumed the risk of scrutiny and comment. 418 U.S. at 342-345, 41 L. Ed. 2d at 807-808, 94 S. Ct. at 3008-9.

In the present case the trial court assumed for the purpose of its decision that the plaintiff was a private individual rather than a public figure. Nevertheless it held, notwithstanding *Gertz,* that actual malice had to be alleged and proved, because the article in question concerned a matter of general public interest. For reasons that will be discussed, we do not agree.

The complaint in the present case was cast in the language of strict liability. It did not allege actual malice, negligence or any other ground of liability. The complaint as drawn was therefore legally insufficient, whether the *New York Times* or some other standard is to govern. In such a situation we would ordinarily affirm the judgment of dismissal regardless of our disagreement with the views expressed by the trial court. In this case, however, the plaintiff's attorney had informed the trial judge of his willingness to amend the complaint to allege grounds of liability short of actual malice, but the trial judge dismissed the complaint because the plaintiff would not allege the *New York Times* standard of " 'actual malice'— that is, with knowledge of its falsity or with reckless disregard of whether it was false or not." (376 U.S. at 279-80.) It has been stipulated before this court that the

complaint is to be treated as though it had been amended to allege in the alternative "negligence, gross negligence or malpractice" on the part of the defendant, and on that basis we proceed.

The defendant concedes that the Federal Constitution does not require Illinois to apply the *New York Times* standard. Nevertheless the defendant urges that we should now adopt that standard as a matter of State policy. The arguments in support of that position lean heavily on the adverse effect on freedom of the press which would supposedly follow in the absence of the actual malice standard. But the extent to which liability for defamation adversely affects freedom of speech and press is a Federal constitutional question, and it has been authoritatively determined by the Supreme Court that a standard of liability less rigorous than that of actual malice will not impermissibly abridge that freedom. In deciding what standard of liability shall now apply to defamatory publications, our function is not to make an independent reappraisal of the requirements of the first amendment, but rather to ascertain whether there is any basis in Illinois law which would prevent the application here of the general principle that a person is responsible for damage that he intentionally or negligently inflicts upon another.

The adoption of a requirement of actual malice cannot, of course, be justified on the theory that such a requirement furthers some overriding public policy of this State, for prior to *New York Times* it was not considered that liability for defamation required any showing of fault at all, let alone proof of actual malice. Moreover, the constitutions of this State have from the outset recognized as fundamental the rights of "enjoying and defending life and liberty, and acquiring, possessing and protecting property and reputation." (Const. of 1818, art. VIII, sec. 1.) From the outset it has been recognized that an individual is entitled to a remedy "for all injuries and wrongs that he may receive in his person, property or

character." (Const. of 1818, art. VIII, sec. 12; Const. of 1848, art. XIII, sec. 12.) (In the most recent constitutions the word "reputation" is substituted for "character." Const. of 1870, art. II, sec. 19; Const. of 1970, art. I, sec. 12.) The freedom of speech provisions of both our former and present constitutions (Const. of 1870, art. II, sec. 4; Const. of 1970, art. I, sec. 4) recognize the interest of the individual in the protection of his reputation, for they provide that the exercise of the right to speak freely shall not relieve the speaker from responsibility for his abuse of that right.

The constitutionally recognized interest of the individual in his reputation is not and can not be measured solely in terms of monetary compensation. At the least, the individual has an interest in preserving and restoring his reputation through an authoritative and publicly known determination that an injurious statement about him is in fact false. To foreclose or restrict the availability of the judicial process as a means of securing such a determination prevents the individual from obtaining the effective vindication to which he is entitled.

The defendant invites us to limit a private individual's right to recover damages to publications which do not relate to matters of public interest. As we have noted, the Supreme Court has already determined in *Gertz* that such a limitation is not required as a necessary means of protecting freedom of speech or of the press. We also believe that the limitation, as a matter of Illinois law, unduly subordinates the rights of the individual.

The infrequency with which recovery of damages has been sustained against the objection that actual malice was not proved attests to the great difficulty facing the plaintiff in making such proof. The category of statements which have an element of public interest is a broad one. (See Comment, *The Constitutional Protection for the News Media from Liability for Defamation: Predictability and the New Synthesis,* 70 Mich. L. Rev. 1547, 1560-1561

(1975).) Whether a matter is one of public interest, moreover, depends to some degree on whether the media themselves have chosen to make it one. To extend the *New York Times* standard to statements falling in the public interest category would thus reduce materially the scope of the protection afforded the private individual. If, as the opinion in *Gertz* states, persons classified as public figures are more commonly those who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" (418 U.S. at 345, 41 L. Ed. 2d at 808, 94 S. Ct. at 3009-10), then use of the public interest criterion would undercut the distinction between private individuals and public figures by treating as the equivalent of the latter those persons whose connection with the matter of public interest in question was involuntary and perhaps remote and peripheral as well.

Use of the public interest criterion could also create a further difficulty, for an article directed generally to a subject concededly of public interest may also include a statement which, although patently defamatory, might not in itself be characterized as an item of public interest. A court would then find itself enmeshed in difficult attempts to determine whether the defamatory statement was germane to the main thrust of the article. *Cf. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 331-332 n.4, 41 L. Ed. 2d 789, 800 n.4, 94 S. Ct. 2997, 3002-3 n.4.

While the *New York Times* standard does embrace liability based on reckless disregard as well as on intentional fabrication, recklessness has been held not to include the failure to investigate. The practical consequence is to dissuade a publisher from making an investigation, since by so doing he incurs the risk of establishing the awareness of falsity which may expose him to liability.

Such a limitation on liability is much narrower than that which applies in the law of torts in general, and in the law of defamation in particular. Under a standard of

ordinary negligence, the question would be, not whether the defendant entertained doubts of the truth of his statement, but rather whether he had reasonable grounds to believe it to be true, and a failure to make a reasonable investigation into the truth of the statement is obviously a relevant factor. See *Oberman v. Dun & Bradstreet, Inc.* (7th Cir. 1972), 460 F.2d 1381; Restatement of Torts (1938), sec. 601.

Defendant concedes that an investigation into the facts is what good journalism requires, but asserts that the imposition of a duty to investigate would nonetheless be unworkable. The argument is that an investigation may lead only to the discovery that there is disagreement about what the facts are. According to defendant, the question whether a publication is false will then, in the minds of the jury, become blurred with the separate question whether the defendant made an adequate investigation.

The situation supposed by defendant may never arise in the present case, for we do not know at this stage of the proceedings what source or sources were relied on in preparing the article, or whether any steps were taken by defendant toward investigating its accuracy, such as making inquiry of the plaintiff herself. In any event, we are not persuaded that the trial judge would be unable by suitable instructions to prevent the confusion of issues which defendant apprehends.

It is suggested that, in lieu of ordinary negligence, liability should be limited to instances of either gross negligence or willful and wanton misconduct. We do not believe that this limitation is either necessary or appropriate. The law of defamation is already complex and multifaceted, and it would not profit by the introduction of a distinction based upon differing degrees of fault. See Prosser, Law of Torts, pp. 180-185 (4th ed. 1971).

It is also suggested that liability might be limited to instances of "journalistic malpractice." As we understand it, this term would denote a departure from the general

standards of care set by publishers in the community. (*Cf. Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 155, 18 L. Ed. 2d 1094, 1111, 88 S. Ct. 1975.) The problem with such an approach is that it would make the prevailing newspaper practices in a community controlling. In a community having only a single newspaper, the approach suggested would permit that paper to establish its own standards. And in any community it might tend, in "Gresham's law" fashion, toward a progressive depreciation of the standard of care.

We hold, therefore, that in a suit brought by a private individual to recover actual damages for a defamatory publication whose substantial danger to reputation is apparent, recovery may be had upon proof that the publication was false, and that the defendant either knew it to be false, or, believing it to be true, lacked reasonable grounds for that belief. We hold further that negligence may form the basis of liability regardless of whether or not the publication in question related to a matter of public or general interest. Our holding in the present case is, of course, not intended to remove any of the absolute or qualified privileges which have heretofore been recognized in this State to the extent that the facts may warrant their application.

Our adoption of negligence rather than actual malice as a standard is in accord with several decisions in other States which were rendered since *Gertz*. (See *Gobin v. Globe Publishing Co.* (1975), 216 Kan. 223, 531 P.2d 76; *Stone v. Essex County Newspapers, Inc.* (Mass. 1975), 330 N.E.2d 161; *Thomas H. Maloney & Sons v. E. W. Scripps Co.* (1974), 43 Ohio App. 2d 105, 334 N.E.2d 494, *cert. denied,* ⸺ U.S. ⸺, 46 L. Ed. 2d 111, 96 S. Ct. 151.) As the court said in *Gobin*:

> "*** [P]ersons are generally held accountable for their negligence—the lack of ordinary care either in the doing of an act or in the failure to do something. The whole theory of negligence presupposes some uniform standard of behavior

for the protection of others from harm. The norm usually is the conduct of the reasonably careful person under the circumstances." 216 Kan. 223, 232, 531 P.2d 76, 83.

Defendant relies upon two cases which take the contrary position, *AAFCO Heating and Air Conditioning Co. v. Northwest Publications, Inc.* (Ind. App. 1974), 321 N.E.2d 580, and *Walker v. Colorado Springs Sun, Inc.* (Colo. 1975), 538 P.2d 450, *cert. denied,* ––– U.S. –––––, 46 L. Ed. 2d 399, 96 S. Ct. 469.

The first of these was a two-to-one decision by the Indiana Court of Appeals for the Third District. The majority opinion, as the dissent notes, is based upon the assumption that independently of the degree of protection given him by the Federal Constitution, the publisher of a defamatory statement relating to matters of general or public concern is protected by the freedom of speech provision of the Indiana Constitution. (See 321 N.E.2d 580, 593-594.) We have concluded, as stated earlier, that the Constitution of Illinois does not lend itself to this construction.

In *Walker v. Colorado Springs Sun, Inc.,* the court reached the same result as the Indiana court, although a two-judge minority took the view that the standard for liability should be that of ordinary negligence. The majority opinion rests essentially upon the premise that abandonment of the *New York Times* standard would have an adverse effect on free speech. We have previously pointed out that for us the contrary view on that issue expressed by the Supreme Court in *Gertz* is controlling.

The dismissal of the complaint was therefore erroneous, and the judgment of the circuit court must be reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.