PAUL L. DARK, Plaintiff-Appellant, v. UNITED STATES FIDELITY &
GUARANTY COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—0124

Opinion filed September 8, 1988.

John P. DeRose, of DeRose & Russo, of Chicago, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous and Grotefeld & Associates, both of Chicago (James T. Ferrini, Frank L. Schneider, and Lisa Marco Kouba, of counsel), for appellee United States Fidelity & Guaranty Company.

John Cadwalader Menk & Associates, of Chicago (John Cadwalader Menk, of counsel), for other appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Paul L. Dark, D.D.S., brought this action to recover amounts owed under a policy of fire insurance, damages occasioned by the insurer's unreasonable and vexatious delay in refusing to pay under the policy, and for damages caused by a libelous statement made in denying said claim. Plaintiff brought this action in two separate counts. Count I was comprised of an action in contract and a statutory

claim wherein the sole defendant was United States Fidelity & Guaranty Co. (hereinafter USF&G). This count sought recovery under a policy of fire insurance issued by USF&G and a statutory claim for damages occasioned by USF&G's vexatious and unreasonable delay in denying the claim. Count II was a libel action against defendants USF&G, William J. Schaefle, Frank L. Schneider, Elizabeth Pendzich, and the law firm of 'Clausen, Miller, Gorman, Caffrey & Witous, P.C. (hereinafter Clausen Miller). Prior to trial, defendants Schneider, Pendzich and Clausen Miller were dismissed (by an order not appealable at that time) due to plaintiff's failure to timely join them as defendants to the action.

The issues were bifurcated. The contract claim proceeded before a jury, which returned a verdict for plaintiff on the issue of liability under the policy of insurance and answered a special interrogatory in the negative on the question of whether the insured intentionally set fire to his office building. The same jury then heard the libel action; however, the trial court directed a verdict in favor of defendants. Plaintiff proceeded before the bench on the vexatious delay claim. The trial court decided for USF&G, finding that plaintiff had not presented a *prima facie* case. The trial court also denied plaintiff's motion to reopen the contract action to recompute damages.

Plaintiff appeals from these rulings raising the following issues: (1) whether the trial court abused its discretion by refusing to award plaintiff attorney fees and costs, plus a penalty for USF&G's vexatious and unreasonable delay in the refusal of plaintiff's claim; (2) whether the trial court erred by precluding plaintiff from amending his complaint and offering evidence of damages incurred in excess of the stated compromised amount; (3) whether the trial court erroneously directed the verdict on the issue of libel on the grounds that plaintiff failed to prove actual malice; and (4) whether the motion judge erred by dismissing plaintiff's third amended complaint as to defendants Schneider, Pendzich and Clausen Miller.

We affirm.

On December 15, 1979, at approximately 8 a.m., a fire occurred in a one-story professional building owned by plaintiff and located at 1052 West 11th Street, Chicago, Illinois. The building and contents were covered by a $75,000 policy of insurance issued by USF&G, which was in full force and effect at the time of the fire. On December 22, 1980, USF&G denied plaintiff's claim under the policy by letter addressed to plaintiff. As the reason for denial, the letter stated that, "Our investigation reveals that this fire appears to have been intentionally set either by yourself, the insured, or by your agent." Plaintiff thereupon

filed suit for payment on the contract of insurance, for damages incurred by reason of the USF&G's vexatious and unreasonable delay in handling and refusing to pay, and for damages occasioned by the defendants' libelous letter of denial.

At the outset of the trial, the court denied defendants' motion for severance, but bifurcated the case, ruling that count I (the contract claim) and then count II (the libel action) would be tried successively before the same jury. The trial court further ruled that the claim of vexatious delay and denial would be heard and decided by the bench.

At the time of trial, count I was directed against USF&G only. Plaintiff had earlier named all defendants, but the trial court entered an order dismissing that portion of the claim for failure to state a cause of action. Thus, all defendants except USF&G were dismissed from count I and plaintiff has taken no appeal from that order. USF&G was allowed to proceed first in trying the contract claim on its affirmative defense of arson. At the end of that trial, the court allowed the jury to deliberate solely on the issue of liability under the policy. The court further requested an answer to a special interrogatory on whether plaintiff or his agent intentionally set fire to the building. The jury returned a verdict for the plaintiff and answered the special interrogatory in the negative.

The case then proceeded to the trial of count II on the issue of libel. Count II was directed against USF&G and the other named defendants. Plaintiff alleged that USF&G engaged Schaefle, Schneider, Pendzich, and the firm of Clausen Miller to conduct an investigation; that defendants "maliciously and wrongfully composed and wrote a certain letter under the hand of Schaefle *** containing a false and defamatory statement" which imputes to plaintiff the commission of arson; and that defendants delivered the letter to third parties, injuring plaintiff in his credit and reputation.

Clausen Miller, Schneider and Pendzich were first added as defendants on June 27, 1983. The letter in question, however, was dated December 22, 1980. Therefore, the trial court dismissed the claim against these three defendants as being untimely. The remaining defendants in count II are Schaefle and USF&G. These defendants filed answers denying the material allegations of plaintiff's complaint and further alleging that the statements in the letter in question were privileged.

During the trial of count II, the trial court also heard evidence, outside the presence of the jury, on the count I issue of vexatious and unreasonable delay. At the end of plaintiff's case on count II, the trial court, upon motion of defendants, directed the verdicts for defendants on the claims of vexatious delay and libel. The court ruled that plaintiff

had failed to make out a case for vexatious and unreasonable delay and failed, in the libel action, to sustain the burden of proving the actual malice necessary to defeat defendants' conditional privilege of business interest.

At the close of plaintiff's case on count I, the court proposed to submit the figure of $34,528 to the jury as liquidated damage. Plaintiff objected to this procedure on the grounds that said amount was only acquiesced to by plaintiff under USF&G's pressure of bad-faith negotiations and unreasonable delay in settlement. The court ruled that it would submit the figure to the jury anyway but would consider making an *additur* to that amount, if awarded, upon further submission of evidence of damage later in the case.

At the close of plaintiff's case on count II, plaintiff moved to amend his third amended verified complaint to increase the prayer for damages by $10,000. After briefing, the court denied plaintiff's motion finding that plaintiff's verified complaint constituted an admission which precluded amendment and to which he was bound. Thereafter, the trial court ruled that plaintiff could not recover any amount in excess of the sum stated in his third amended verified complaint. Plaintiff appeals.

I

■■ ■ Our first inquiry is to determine whether the trial court abused its discretion by finding that plaintiff failed to present a *prima facie* case and directing the verdict for USF&G on the issue of vexatious delay. Plaintiff contends that he presented sufficient evidence to establish a *prima facie* case of vexatious and unreasonable delay. He argues first that USF&G's delay of more than one year before denying liability under the fire insurance policy is a factor establishing his claim. He also asserts that USF&G's affirmative defense of arson was not a reasonable defense, as indicated by the fact that plaintiff ultimately prevailed before the jury.

Section 155 of the Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 767) provides, *inter alia*, that "in an action by or against an insurance company wherein there is an issue of liability on a policy of insurance, an insured can recover attorney fees and costs plus a penalty not to exceed $5,000 in the event the conduct of the insurer in resolving the issue of liability is vexatious and unreasonable." (*Watson v. State Farm Fire & Casualty Co.* (1984), 122 Ill. App. 3d 559, 564.) While the question of whether the insurer's action and delay is vexatious and unreasonable is a factual one, it is a matter for the discretion of the trial court. As such, the trial court's determination will not be dis-

turbed on review unless an abuse of discretion is demonstrated in the record. *Fassola v. Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d 825, 832.

Plaintiff asserts that USF&G's delay of more than one year in denying his claim was, in itself, unreasonable and vexatious. Plaintiff, however, cites no authority for this assertion. He points out that the police department had suspended its investigation of the fire nearly nine months prior to the denial. However, it is well established that time alone, or any other single factor taken by itself, is not controlling in determining whether an insurer is guilty of vexatious delay in refusing to settle. *Deverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 124.

Plaintiff presents as an additional factor for determination, that the jury, finding that USF&G had not proved its affirmative defense of arson, decided in his favor on the issue of liability. The law is clear that "a refusal to settle is not vexatious *per se*, and this section is not to be applied merely because an insurer has been unsuccessful in supporting its position at trial [citation]; that is, where there is a *bona fide* dispute between the insurer and the insured." (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 209.) The determination must be based upon an assessment of the totality of the circumstances.

USF&G claims that its investigation revealed that the fire in plaintiff's office may have been caused by arson. An arson defense is usually established by circumstantial evidence and there are basically three elements: incendiarism, access and motive. In determining that the fires were incendiary, USF&G considered the report of John Kammerer, the Chicago fire department battalion chief assigned to the fire. Kammerer testified that he found multiple, separate, and unconnected fires. Although the majority of the fire damage was in the laboratory, there was also damage in plaintiff's private office and reception area. Additionally, the fires started at desk top or counter top level as evidenced by the fact there was no fire damage below that level. Further, he stated that the fire did not reach an intensity sufficient to cause spontaneous ignition or "flash over"; thus they must have been ignited separately.

Its investigation further found that access to the building was limited to only those persons possessing keys. The front entrance to the building was secured by two doors, each having a dead bolt lock which had to be locked with a key. These doors were locked. The rear entrance was secured by a door with a dead bolt lock, as well as an iron gate that locked with a padlock. These were also locked. The windows

were closed and barred. While the glass in the windows was broken, the adjuster, Mr. Rozak, opined that they had been broken by the heat. Plaintiff, his mother, his father, and his son had the only keys to the premises.

A feasible motive for arson was not discovered by USF&G's investigation until November 1980, when Ms. Pendzich reviewed the divorce court file. It was then revealed that plaintiff had not paid his Federal tax obligations for 1976, 1977, and 1978. The total delinquency, which consisted of principal, interest, and penalties, was approximately $50,000.

From the foregoing it appears that USF&G's refusal to settle was based on a reasonable determination that a *bona fide* dispute existed as to liability. Thus, the trial court's determination was not an abuse of discretion.

## II

Plaintiff's second contention challenges the trial court's denial of his proffered post-judgment amendment of his verified complaint. Subsequent to the jury verdict in his favor on liability, plaintiff moved to amend his statement of damages in his verified complaint to increase his damages by approximately $10,000. The trial court refused the amendment, ruling that the statement constituted a judicial admission by which he was bound and, therefore, that plaintiff could not amend his complaint or introduce evidence concerning the actual extent of his loss in count I.

The majority of plaintiff's brief on this issue addresses his assertion that he is not bound by the sum stated in his verified complaint by reason that such sum is not a valid compromise settlement. However, neither the trial court's ruling nor the scope of our review is concerned with the enforceability of an agreement relative to either settlement or damages. The inquiry here is specific and narrow; it is whether plaintiff can amend his statement of damages in a verified complaint after judgment has been entered.

It is a general rule of pleadings that an amended pleading supersedes the prior pleading. (*Beverly Bank v. Coleman Air Transport* (1985), 134 Ill. App. 3d 699, 703; *Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 198.) In this event, the prior pleading ceases to be a part of the record and any admissions made in it serve as evidentiary admissions. (*Robins*, 123 Ill. App. 3d at 198.) However, exceptions to these general rules of pleadings and evidence have been carved for verified pleadings.

While an amended pleading does supersede a prior verified plead-

ing, the verified pleading remains part of the record. "Thus, the admissions of a party contained in an original verified pleading are judicial admissions and still bind the pleader even after the filing of an amended pleading which supersedes the original." (*Robins*, 123 Ill. App. 3d at 198, citing *Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 670.) "Judicial admissions are not evidence at all, but are formal admissions in the pleadings *** which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 50.

■ In the instant case, plaintiff's verified pleading stated that his damages were $34,628. This was a judicial admission which removed any factual issue as to the amount of damages from the case. A pleading may be amended after final judgment only to conform it to the proof. (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(c).) Here the proof, in the form of a judicial admission, established the amount of damages at $34,628. The proffered amendment would have raised the amount of damages by approximately $10,000. Therefore, the amendment was not in conformity with the proof and the trial court properly disallowed it.

Plaintiff continues by arguing that he should not be bound by his stated damages because it amounts to no more than an estimate of the damages due if liability was established. He relies on *Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, as support for this proposition. In *Baker-Wendell*, the plaintiff, an architectural firm, sought recompense for professional services. In its initial verified complaint, it swore that such services were rendered in reliance upon a written contract. In its amended verified complaint, it alleged that the same service had been performed as a result of a telephone conversation. In affirming the trial court's ruling that plaintiff was bound by its judicial admissions in the initial complaint, we stated that "[t]o defeat recovery, a party's judicial admission must: be deliberate; relate to concrete facts; and not amount to matters of opinion, estimate, appearance, inference or uncertain summary." *Baker-Wendell*, 100 Ill. App. 3d at 929.

In the instant action, plaintiff's verified complaint states that he "sustained damages in a large amount, namely: the sum of thirty-four thousand, six hundred and twenty-eight ($34,628.00) dollars." We find nothing in plaintiff's statement of damages to indicate that it was an estimate or uncertain sum. The admission is clear and deliberate, and relates to a concrete fact. Thus, we reiterate the words we used in the case upon which plaintiff mistakenly relies. "Admissions by a party

which are so deliberate and unequivocal as to matters within its knowledge will be deemed to conclusively bind that party and it will not subsequently be heard to contradict those admissions." *Baker-Wendell*, 100 Ill. App. 3d at 929.

## III

■ Next, plaintiff contends that the trial court erred by directing the verdict for the defendants on the ground that plaintiff failed to prove a *prima facie* case of libel. In so ruling, the trial court found that plaintiff had failed to establish the actual malice necessary to defeat defendants' affirmative defense of conditional privilege. Plaintiff argues that (A) defendants' libelous statement is not entitled to any special constitutional protection; (B) the rule espoused in *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, requiring a plaintiff to prove actual malice to recover was "expressly rejected" by the later United States Supreme Court case of *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997, and by the Illinois Supreme Court in *Troman v. Wood* (1975), 62 Ill. 2d 184; (C) defendants' libelous statement should not be afforded the common law defense of qualified privilege because the communication was published to improper parties and went beyond the scope of its purpose; and (D) alternatively, he presented sufficient evidence to establish actual malice.

Plaintiff's first two arguments are indicative of his confusion between the constitutional protections afforded the media in libel cases and the common law principles of libel in actions which do not involve the media. For plaintiff's clarification, we point out that, generally speaking, the United State Supreme Court has held that the media are entitled to constitutional protections under the first amendment because of the importance of their role in disseminating information to the public. See *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710.

Indeed, this seminal case, *New York Times*, developed the rule requiring a plaintiff to prove actual malice to recover in an action for libel from a media defendant. The Illinois Supreme Court, in *Troman* (62 Ill. 2d 184), followed the direction of the United States Supreme Court in *Gertz* (418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997), and held that malice was not required to form the basis of a libel action against a media defendant regardless of whether or not the publication in question related to a matter of public or general interest. However, these decisions have had no bearing on nonmedia cases. Individual actions for libel, which do not concern a media defendant, are based on

common law concepts and, therefore, a plaintiff's right to recovery is subject to the limitations imposed by the individual States. Furthermore, our supreme court did not intend to abrogate any of those limitations to recovery imposed by the common law by its decision in *Troman*. In fact, the court specifically stated that its holding in *Troman* was "not intended to remove any of the absolute or qualified privileges which have heretofore been recognized in this State to the extent that the facts may warrant their application." *Troman*, 62 Ill. 2d at 198.

The defense of an absolute or qualified privilege to a common law action for libel has long been established in Illinois. A privileged communication has been defined as "one which, except for the occasion on which or the circumstances under which it is made, might be defamatory and actionable." (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 376.) The determination of whether an allegedly defamatory statement is protected by a privilege is a question of law for the court. (*Edwards v. University of Chicago Hospitals & Clinics* (1985), 137 Ill. App. 3d 485, 489.) The occasion where defamatory words are absolutely privileged is narrow and generally limited to legislative, judicial, quasi-judicial proceedings and other acts of State. (*Allen v. Ali* (1982), 105 Ill. App. 3d 887, 890.) The essential elements for a qualified privilege are: "(1) good faith by the writer; (2) an interest or duty to be upheld; (3) a statement limited in its scope to that purpose; (4) a proper occasion and (5) publication in a proper manner and to proper parties only." (*Myers v. Spohnholtz* (1973), 11 Ill. App. 3d 560, 567.) Thus, "[i]n the absence of actual malice, a communication may be qualifiedly privileged, if the other essential elements are present, even though it is not true, and even though it charges a crime, but a communication loses its character as privileged and is actionable upon proof of actual malice." (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 377.) In the instant action, no constitutional issues are raised and we are singularly concerned with whether the defamatory statement in defendants' letter of denial is qualifiedly privileged.

■ Plaintiff asserts that defendants' libelous statement is not entitled to a qualified privilege because it was not properly limited in its scope and because it was published to improper parties. Specifically he complains of the publication of the statement to his attorney, his adjustors, the Department of Insurance, and "to the many persons in defendants' employ." He further urges that defendants could have fulfilled their interest by merely informing the complained-of persons that the claim was being denied for a violation of the policy of insurance.

Considering first whether the scope of defendants' statement was

excessive, we point out that section 154.6 of the Insurance Code provides that it is an improper claims practice to "[f]ail[ ] in the case of the denial of a claim or the offer of a compromise settlement to promptly provide a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial or compromise settlement." (Ill. Rev. Stat. 1981, ch. 73, par. 766.6(n).) Clearly, defendants uphold their interest by conforming to this statutory requirement. The letter to plaintiff did no more than apprise him of the basis in the insurance policy for the denial of his claim, as required by the statute. Thus, we can only find that the statement did not exceed the scope of defendants' interest.

We further find that the letter of denial was not published to any improper persons. The publication to plaintiff's adjustors, Post Construction Company, in response to their inquiry, was proper because they were plaintiff's authorized agents. (*Judge v. Rockford Memorial Hospital* (1958), 17 Ill. App. 2d 365, 377.) The publication to plaintiff's attorney, likewise, was proper, although no inquiry had been made, where the attorney appeared on behalf of plaintiff concerning this matter and, as plaintiff's legal representative, was obligated to explain to plaintiff his legal rights based on the denial; defendants were under a legal obligation to promptly inform plaintiff of their denial, and the registered letter of denial mailed to plaintiff had been returned "undelivered."

The inquiry from the Department of Insurance resulted from a complaint filed there by plaintiff's agents, the Post Construction Company. Response to the Department of Insurance, which is statutorily authorized to investigate the denial of claims, was required by the Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 1065.715). Of course, USF&G, as the insurer and authority behind the issuance of the letter, had an interest to uphold and, therefore, cannot be considered an improper party. The Metropolitan Chicago Loss Bureau and the Clausen Miller law firm, of which defendant Schaefle was a partner, were agents of USF&G retained to investigate plaintiff's claim and, likewise, were not improper parties. Indeed, it was through their efforts that the claim was denied. Thus, we find that defendants' statement in the denial letter was qualifiedly privileged.

Having decided that, as a matter of law, defendants' libelous statement was qualifiedly privileged, it remains for us to determine whether the trial court erred by directing the verdict at the close of plaintiff's evidence in defendants' favor. "In this regard, we will apply the established rule that the verdict should have been directed in favor of defendants *** only if it appears, after a review of the entire record

on the issue of the existence of actual or express malice, that all of the evidence, when viewed in its aspect most favorable to plaintiff, so overwhelmingly favors the defendants that no contrary verdict based on that evidence could ever stand." (*Myers v. Spohnholtz* (1973), 11 Ill. App. 3d 560, 570, citing *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) To prove the existence of actual or express malice plaintiff was required to present evidence establishing that defendants "[did] not believe in the truth of the defamatory matter, or [had] no reasonable grounds for believing it to be true." *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 350.

Plaintiff mistakenly relies on *Bloomfield v. Retail Credit Co.* (1973), 14 Ill. App. 3d 158, for the proposition that a failure of the defendant to adequately investigate the occurrence is a factor tending to prove actual malice. He asserts that, in the instant case, defendants' failure to interview Lieutenant Doherty, the fire fighter who actually extinguished the blaze, was indicative of actual malice. In *Bloomfield*, the defendant was hired by the plaintiff's prospective employer to check the plaintiff's past employment history, credit, and other information. Although the defendant company warned its employees against including libelous statements in their reports without factual confirmation and stressed the importance of such confirmation where the source of the information is biased or prejudiced, one of its investigators issued a report containing a libelous statement from a biased source without obtaining the requisite confirmation. The court found that such was sufficient evidence to support the jury's verdict in favor of plaintiff and the jury's special finding of malice.

■ The instant case is factually distinguishable, however. Defendants retained and relied on the advice of disinterested experts: Ronald Rozak to investigate the cause and origin of the fire; Metropolitan Chicago Loss Bureau to advise as to the course and progress of the investigation; and the Clausen Miller law firm to conclude the investigation and advise USF&G as to its legal rights and duties regarding the claim. Defendants interviewed Chief Kammerer, battalion commander of the Chicago fire department, who indicated that he suspected arson, and Detective George Jenkins of the Chicago police department's bomb and arson squad, who also reported that the fire was intentionally set. In addition, Lieutenant Doherty testified that he extinguished one fire, that it was not his job to determine the cause of the fire, and that he in fact did not attempt to determine the cause of the fire. Thus, we do not agree with plaintiff's assertion that defendants failed to adequately investigate. Accordingly, we find that the evidence, viewed in the aspect most favorable to plaintiff, does not establish the

existence of malice, and, therefore, the trial court properly directed the verdict in defendants' favor on this issue.

## IV

■ Lastly, plaintiff contends that it was error to grant summary judgment to the defendants, Schneider, Pendzich, and Clausen Miller, on the ground that they could not be added as new parties after the lapse of the statute of limitations. He asserts that the addition of these defendants was appropriate under section 2—616(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—616(d)).

To begin, we point out that while the added defendants were dismissed, it was not done by summary judgment. The trial court struck count I of plaintiff's third amended complaint, the contract claim, as to the newly added defendants (Schneider, Pendzich and Clausen Miller) for failure to state a cause of action and dismissed those defendants as to count II, the libel claim, because it was barred by the applicable one-year statute of limitations.

Additionally, plaintiff's reliance on section 2—616(d) of the Code of Civil Procedure for support of this argument is misplaced. That section, commonly known as the misnomer statute, "was added in 1955 to cover the situation in which the plaintiff sues the wrong defendant but serves process upon the agent of the right defendant, and the statute of limitations runs on the claim before rectification of the mistake." (Ill. Ann. Stat., ch. 110, par. 2—616(d), Historical and Practice Notes, at 528 (Smith-Hurd 1983).) The instant case does not present this type of situation. Plaintiff served process on defendants USF&G and Schaefle and intended to sue these defendants. The record indicates that plaintiff was aware of the involvement of Schneider, Pendzich, and Clausen Miller long before the filing of his complaint; indeed, long before his claim was denied. Clearly, plaintiff cannot claim a misnomer here and section 2—616(d) is inapplicable. In light of this, we find that the trial court properly dismissed defendants Schneider, Pendzich, and Clausen Miller as plaintiff's attempt to add them on count II was barred by the statute of limitations.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and McMORROW, JJ., concur.