BANK OF BENTON, Plaintiff-Appellant, *v.* DANNY M. COGDILL *et al.*, Defendants-Appellees.

Fifth District   No. 82—694

Opinion filed September 26, 1983.

Richard O. Hart, of Hart & Hart, P.C., of Benton, for appellant.

J.C. Mitchell, of Mitchell & Armstrong, Ltd., of Marion, for appellees.

JUSTICE JONES delivered the opinion of the court:

The plaintiff, Bank of Benton, Benton, Illinois, appeals from the trial court's judgment denying it a deficiency judgment and attorney fees following foreclosure of a mortgage and sale of the property subject to the mortgage. The bank asserts on appeal that this judgment

was contrary to the law and the evidence and that the bank was entitled to a deficiency judgment and attorney fees where the amount realized from the judicial sale of the mortgaged property was less than the amount of the defendants' indebtedness. The defendants-mortgagors contend, however, that the court's judgment can be sustained on the basis of their affirmative defense in the foreclosure action that the bank had waived its right to a deficiency judgment by agreeing to take a deed to the mortgaged property in lieu of foreclosure. We find as a matter of law that no such agreement existed, and we accordingly reverse the judgment of the trial court.

On July 31, 1980, the plaintiff bank filed a two-count complaint for foreclosure of a first and second mortgage on real estate owned by the defendants, Danny and Carla Cogdill. In their answer to this complaint the defendants asserted that the plaintiff was not entitled to a deficiency judgment against them because, in March and April of 1980, the defendants had "tendered and offered to convey" their interest in the real estate to the plaintiff and were refused. At that time, the defendants stated, the real estate was of a fair market value sufficient to pay the amount of indebtedness due the plaintiff under its notes and mortgages. The defendants further alleged that the plaintiff was not entitled to attorney fees in the foreclosure action because this action was unnecessary and was due to the plaintiff's failure to accept the real estate in satisfaction of the debt.

Upon stipulation of the parties the court entered a partial summary judgment of foreclosure in favor of the plaintiff, reserving for later hearing the issues of the plaintiff's entitlement to a deficiency judgment and attorney fees. The total amount of indebtedness was stated as $81,673.05, plus attorney fees if found to be includable at a later hearing. The court conducted a sale of the real estate, and the property was sold to the plaintiff as high bidder for $63,000. The court then filed a report of sale and distribution in which it found a deficiency in the amount of $19,416.83.

Following the sale the plaintiff filed a motion for summary judgment on the remaining issues, asking the court to determine that it was entitled to a judgment for the deficiency plus attorney fees. The court made a record sheet entry order denying the motion, in which it stated:

> "Consideration has been given to the arguments and facts as thus far presented. There is a shortage of case law and statute law as to the issues involved. The plaintiff contends that it is entitled to a deficiency judgment by reason of the judicial sale of the property for a lesser amount than was sufficient to liqui-

date the debt plus costs and attorney's fees. The defendants contend that the plaintiff is not entitled to said benefits by reason of the fact that, at least three (3) months before suit to foreclose was filed, the defendants tendered and offered to convey their interests in the realty to plaintiff who refused the tender and offer. Further, the defendants claim and assert that at the time of the tender, the fair market value of the property exceeded the total of the amounts due by way of principal and interest.

The plaintiff's position finds support in the pleadings and affidavits and other matters in the file. There seems no law [sic] supporting defendants' position. This case is concerned with both legal and equitable principles. The rights of the plaintiff must be considered in light of equity and good conscience. If the defendants were able to prove their position, it would shock one's conscience to permit the plaintiff to stiffen its position and procrastinate in the settlement and disposition of the business transaction between plaintiff and defendants, and thereby cause a deficiency of $19,416.83, and expect the defendants to make plaintiff whole. The defendants contend, in substance, that they tried to make the plaintiff 'whole' yet plaintiff refused. The judgment of this court leaves the plaintiff to suffer whatever ills result from a situation that plaintiff could have avoided. The defendants yet must establish their position by proof. Motion for Summary Judgment denied."

A hearing was held on July 28, 1982, on the issues of the plaintiff's right to a deficiency judgment and attorney fees. At that hearing, defendant Danny Cogdill testified that he became unemployed in December 1979 and was unable to make his mortgage payments. In April 1980 he received a number of telephone calls from David Bauer, vice-president of the Bank of Benton, regarding when he would be able to make some payment on the overdue balance. Sometime shortly after April 25, 1980, defendant Cogdill received a letter from Bauer, which stated:

"If we do not have some assurance of payment on the loan, it may be necessary for us to start foreclosure action or have you deed the property to the Bank of Benton in satisfaction of the debt."

Mr. Cogdill testified further:

"A. On April 29, I contacted Mr. Bauer by telephone and informed him that we would accept the Bank's offer to deed the property over to the Bank of Benton in satisfaction of the debt

against me.

Q. When you refer to the Bank's offer, are you referring to what's set forth or part of what's set forth in Defendants' Exhibit 2, the letter of April 25th?

A. Yes.

Q. What, if anything, did Mr. Bauer say to you at that time?

A. He said something to the effect that he would start the paper work pertaining to the conveyance of the deed in satisfaction of the debt and that he would be in touch with me shortly.

Q. What is the next thing that you did or heard?

A. The next thing I heard was I received a telephone conversation [sic] from Mr. Bauer approximately one week later stating that other Bank of Benton officials had declined his previous offer to accept the conveyance of the deed in satisfaction of the debt against it.

Q. What did he say to you about whether or not they were going to go ahead and go through with it?

A. He just said that he could not go through with it at that point.

Q. What, if anything, did you tell him?

A. I told him that's all that I knew to do because I was still unemployed and I had no money to make the payment and that they would just have to do whatever they saw fit.

Q. What, after that time, took place regarding the matter of the delinqency?

A. I received another telephone call, and I think a letter confirmed this, and they wanted to know if I had any other assets that I could pledge in addition to the property itself for satisfaction of the debt.

Q. What, if anything, did you advise them?

A. I advised them that the only thing I had of any value was an interest in a land trust pertaining to a new office building in Benton, Illinois, and that I would be willing to sign over this land trust interest which we figured had a value of $6,000.00 to $8,000.00 net value in it.

* * *

Q. What happened after that, if anything?

A. He said he would take it back to the Board and see what they had to say abut that.

* * *

A. The next conversation was that the Bank of Benton,

through Mr. Bauer—that they had decided they were not interested in acquiring any more property and that they rejected the offer.

Q. They rejected the original proposal?

A. The original proposal plus the conveyance of the land trust interest.

Q. Now, is that when foreclosure followed?

A. Yes."

David Bauer, called by the defendants as an adverse witness, testified that he recalled having conversations with Mr. Cogdill in April 1980 regarding the matter of his delinquencies. When questioned about a specific conversation occurring between April 25, 1980, and May 9, 1980, he stated that, while he could recall nothing else about the conversation, "the substance of the conversation was that we wanted to be paid."

Later, on direct examination by the plaintiff, Mr. Bauer testified that "at some point" after the letter of April 25, 1980, was sent, Danny Cogdill came into the bank to discuss the situation with him. The testimony continued:

"Q. Did you ever tell him [Danny Cogdill] that the Bank would accept the property in satisfaction of the debt?

A. No, I did not.

Q. Did you ever tell him that in writing?

A. No, I did not.

Q. Did you ever tell him that orally?

A. No, I did not.

Q. Did Mr. Cogdill ever offer to make a deed to you in satisfaction of the debt?

A. Yes, he did.

Q. Do you recall when he made that offer?

A. It was at some time prior to April 25.

Q. Do you know approximately how long prior—

A. Within a week prior to April 25.

Q. In that conversation did he offer to deed the property to the Bank of Benton?

A. Yes, we discussed this possibility of him deeding the property to the Bank.

* * *

Q. Did you ever tell Mr. Cogdill that you would accept the property in satisfaction of the debt?

A. No.

* * *

Q. What did you tell Mr. Cogdill about taking the property in satisfaction of the debt, if anything?

A. Mr. Cogdill and I discussed taking the property in satisfaction of the debt. I said that this might be possible. Certain procedures we would have to go through [*sic*].

Q. What were those procedures?

A. Number one would be a new appraisal.

Q. What else?

A. Number two would be, if we found everything to be all right would be title work to be certain that there were no other liens against the property other than the two liens to the Bank of Benton.

Q. What would be the purpose of the appraisal?

A. To determine if the value of the property was sufficient to pay off the two loans.

Q. And did you have that appraisal made?

A. We did.

Q. And after that appraisal was made did the Bank make a decision about what to do in this problem area?

A. We made a decision not to accept tender of the property in satisfaction of the debt.

\* \* \*

Q. Was that decision communicated to Mr. Cogdill?

A. Yes, it was.

Q. How was it communicated to him?

A. I discussed it with him over the telephone.

\* \* \*

Q. That would have been after the letter of April 25, I take it?

A. Yes."

During the course of the hearing, the court allowed the defendants to amend their answer to allege that the plaintiff was not entitled to a deficiency judgment "because on April 25, 1980, plaintiff offered to take a deed from defendants in lieu of foreclosure. Defendants accepted said offer and notified plaintiff, who stated that the paper work would then be commenced. Thereafter, plaintiff refused to perform said agreement and continues to do so to the date of this agreement [*sic*]." The defendants repeated their assertion "that at the time they offered to deed said real estate to plaintiff, the fair cash market value was sufficient to pay the amount of principal and interest [then due]." The plaintiff filed a reply in which it denied the existence of the alleged agreement and further raised the issue of

the statute of frauds (Ill. Rev. Stat. 1981, ch. 59, par. 2) with reference to any such agreement.

The trial court ruled in favor of the defendants and, on October 21, 1982, made the following record sheet entry:

> "This court after hearing the evidence and arguments of counsel *** finds that the facts and the principles of law and equity are compelling to the extent that a deficiency judgment against the defendants is denied."

A written judgment was subsequently filed denying the plaintiff a deficiency judgment and attorney fees.

On appeal from this judgment the plaintiff contends that there was no basis in law or fact for the court's ruling that the plaintiff was not entitled to a deficiency judgment. The plaintiff asserts initially that the court was without authority to disallow the deficiency judgment on general equity principles. (See *Metz v. Dionne* (1928), 250 Ill. App. 369; *cf. Eiger v. Hunt* (1935), 282 Ill. App. 399 (court reversed trial court's denial of deficiency judgment based on "the equities of the case").) In addition, the plaintiff notes, there was no showing in the instant case that it had waived its right to a deficiency judgment by means of the statutory procedure for such waiver (Ill. Rev. Stat. 1981, ch. 77, par. 18(c), now ch. 110, par. 12—126).

The defendants take no issue with these assertions by the plaintiff but contend, rather, that the trial court's ruling can be sustained on the basis of the alleged agreement by the bank to take a deed to the mortgaged property in lieu of foreclosure. They assert that although there was no statutory waiver of the deficiency by the bank, the bank effectively waived its right to a deficiency judgment by invoking the common law means of acquiring a mortgagor's interest in real estate by way of deed. (See 27 Ill. L. & Prac. *Mortgages* sec. 241 (1956).) The defendants contend, therefore, that since the court could have found from the evidence that such a contract existed, the court's judgment denying a deficiency judgment and attorney fees should be affirmed.

As evidence of the alleged contract, the defendants cite the letter sent to the defendants on April 25, 1980, in which the bank's vice-president, David Bauer, stated: "If we do not have some assurance of payment on the loan, it may be necessary for us to start foreclosure action or have you deed the property to the Bank of Benton in satisfaction of the debt." The defendants contend that this statement constituted an offer by the plaintiff which they accepted by tendering a deed to the bank. Alternatively, the defendants contend that even if this statement could not be construed as an offer to take a deed to

the mortgaged property in lieu of foreclosure, the bank subsequently agreed to accept the deed tendered by defendant Cogdill when Mr. Bauer told Cogdill he would start the paper work concerning such a transaction.

■ The plaintiff does not dispute the facts relied upon by the defendants but contends that, even assuming such facts, the evidence at trial failed to establish the existence of a contract. Where there is no dispute as to facts essential to a purported contract, the question of its existence is solely a matter of law for determination by the court. (12 Ill. L. & Prac. *Contracts* sec. 46 (1955); *Anderson v. City of Northlake* (N.D. Ill. 1980), 500 F. Supp. 863; see 3 Corbin on Contracts sec. 595 (1960).) The trial court here made no finding with regard to the contract alleged by the defendants and, indeed, gave no reason for its decision denying the plaintiff a deficiency judgment. This court, then, must consider the facts asserted by the defendants in light of basic principles of contract law to determine the existence of the purported contract.

■■ ■ An offer sufficient to form the basis of a contract has been defined as an act that creates a power of acceptance in the offeree. (1 Corbin on Contracts sec. 11 (1963).) Professor Corbin states that, after an offer is made, "a voluntary expression of assent by the offeree is all that is necessary to create what we call contract." (1 Corbin on Contracts sec. 11, at 24 (1963).) He continues:

> "[An offer] must be an expression of will or intention. It must be an act that leads the offeree reasonably to believe that a power to create a contract is conferred upon him. *** It is on this ground that we must eclude invitations to deal or acts of mere preliminary negotiation ***. *** *So long as it is reasonably apparent that some further act of the offeror is necessary*, the offeree has no power to create contractual relations by an act of his own, and there is as yet no operative offer." (Emphasis added.) 1 Corbin on Contracts sec. 11, at 25 (1963).

While, in the instant case, the defendants contend that the bank offered to accept a deed in lieu of foreclosure by its statement of August 25, 1980, we believe this statement was in the nature of preliminary negotiations regarding steps that would have to be taken if the defendants continued to default on their loan payments. The statement contained two possible alternative solutions to the parties' problem and thus did not constitute an offer that could be accepted by the defendants with no further action by the plaintiff bank. Rather, the bank's statement left open the possibility that it would elect to pursue statutory foreclosure proceedings, as it in fact did. We therefore find

no merit in the defendants' argument that the bank's statement constituted an offer which they accepted by tendering their deed to the mortgaged property.

The defendants' further contention that a contract was formed when they themselves offered and the bank accepted a deed to the mortgaged property is likewise without merit. While there is no question that the defendants offered to deed their property to the bank in lieu of foreclosure, it does not follow that the plaintiff accepted this offer when vice-president Bauer agreed to "start the paper work" involved in such a transaction. In order to create an enforceable contract, the acceptance by the offeree must be unequivocal. (*Lee Shell Co. v. Model Food Center, Inc.* (1969), 111 Ill. App. 2d 235, 250 N.E.2d 666.) The equivocal nature of Bauer's statement here is made evident by his testimony that the paper work referred to included getting an appraisal of the property in question and having title work done to see that there were no other liens against the property. The record contains nothing to indicate that Bauer meant anything more by his statement or that the defendants were justified in concluding that the bank had indeed accepted their offer. Since the record fails to disclose a meeting of the minds essential to the formation of a contract, we find no basis for the defendants' contention that the plaintiff's right to a deficiency judgment in the instant case was barred by its contract to take a deed in lieu of foreclosure.

In the absence of such a contract waiving its right to a deficiency judgment, the plaintiff in the instant case was entitled to a judgment for the deficiency remaining after the foreclosure and sale of the mortgaged property. The right to secure such a deficiency judgment in any foreclosure proceeding is clear, provided the mortgagee receives only one full satisfaction. (*Emerson v. La Salle National Bank* (1976), 40 Ill. App. 3d 794, 352 N.E.2d 45; *In re Estate of Folksdorf* (1940), 304 Ill. App. 463, 26 N.E.2d 660.) Where, as here, a proper showing had been made as to the pleadings and the evidence, the entry of such a decree was mandatory (*Clifford v. Levin* (1935), 282 Ill. App. 263), and the court lacked discretion to deny the plaintiff relief on equitable grounds. (But *cf. Collins v. Baim* (1939), 299 Ill. App. 405, 20 N.E.2d 298 (court had jurisdiction to determine any fact occurring after decree of foreclosure which would render deficiency decree inequitable).) The plaintiff was further entitled by the terms of its mortgages and notes to a judgment for reasonable attorney fees incurred in the foreclosure proceedings (27 Ill. L. & Prac. *Mortgages* sec. 514 (1956)), the amount to be determined by the trial court upon remand for that purpose.

For the reasons stated we reverse the judgment of the circuit court of Williamson County and remand this cause for further proceedings.

Reversed and remanded.

KASSERMAN and KARNS, JJ., concur.