JAMES L. PINSKER, Plaintiff-Appellant, v. KANSAS STATE BANK, Defendant-Appellee.

Fourth District No. 4—85—0669

Opinion filed April 3, 1986.—Rehearing denied May 1, 1986.

Harlan Heller and C. Steve Ferguson, both of Harlan Heller, Ltd., of Mattoon, for appellant.

Randolph M. Rich, of Meehling, Rich & Bernardoni, of Marshall, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, James Pinsker, brought this action against the defendant, the Kansas State Bank, alleging interference with contract, fraud, abuse of process, malicious abuse of process, and malicious use of process. The plaintiff appeals from the trial court's order granting summary judgment in the defendant's favor.

The plaintiff owned and published several small newspapers, including the Kansas Journal and the Oakland Ledger-Messenger. The plaintiff financed the purchase of these newspapers through the defendant. The plaintiff and his wife executed mortgages on their real estate as security. The plaintiff also executed an agreement, giving the defendant a security interest in all office equipment, fixtures, furniture, inventory, and subscription lists. The plaintiff obtained subsequent financing from the defendant in varying amounts for which the defendant was given a security interest in all assets, real and personal, of the Kansas Journal, Oakland Ledger-Messenger, and Brocton-Hume Recorder-Review.

On January 18, 1980, the defendant filed a complaint and confession of judgment note for the sum of $43,625.29. Judgment by confession was entered against the plaintiff but was later vacated. On February 2, 1981, the defendant and Ryan executed documents relating to the interest under the mortgage and security agreement that the defendant had obtained from the plaintiff. The first document stated:

"THIS INDENTURE WITNESSETH, That the Assignor, KANSAS STATE BANK, *** for good and valuable consideration, the receipt whereof is hereby acknowledged, do hereby assign, transfer, and set over unto STEVE RYAN all right, title and interest we may hold in said Security Agreement together with a Note and Claim secured thereby, to have and to hold the same unto Steve Ryan, his heirs and assigns, and we do hereby make, constitute and appoint STEVE RYAN, our

true and lawful attorney, irrevocable, in our name or otherwise, but at the proper costs and charges of STEVE RYAN, to have, use and take all lawful ways and means for the recovery of the said money and interest; and in case of payment, to discharge the same as fully as we might or could do if these presents were not made.

And we do for ourselves, our successors and assigns, covenant with STEVE RYAN, his heirs, executors, administrators, and assigns, that said Corporation has good right to assign the same."

In two similar instruments, the defendant assigned the mortgages and notes along with its interest in the judgment against Pinsker to Ryan. Both contained identical language appointing Ryan as the defendant's attorney.

Ryan instituted a suit to foreclose the Oakland mortgage. He also obtained a temporary restraining order against the plaintiff prohibiting him from coming onto the premises or otherwise interfering with the operation of the newspapers. The restraining order was subsequently dissolved as having been improperly issued against the plaintiff. On February 24, 1981, the plaintiff moved to dismiss the defendant's action on the notes. The judgment of confession had already been vacated. On March 10, 1981, the court dismissed the defendant's action, holding that the defendant had no interest to pursue by virtue of its assignment.

On January 26, 1982, the plaintiff filed a five-count complaint against the defendant. Count I alleged Ryan had been the plaintiff's employee prior to February 2, 1981. The plaintiff alleged the defendant had interfered with his contractual relationship with Ryan and induced Ryan to breach his duty of loyalty by appointing Ryan its agent and having him file suit against the plaintiff. Count II alleged the defendant had committed a fraud in employing Ryan to collect money and seize the plaintiff's property. Counts III and V allege the bank, through its agent, Ryan, had committed the torts of abuse of process, malicious abuse of process, and malicious use of process.

The defendant filed a motion for summary judgment, arguing that as a matter of law, there was no principal-agent relationship between it and Ryan. The defendant filed depositions of Leonard Wilkinson, its former president; Michael Kern, the current president; Jack Asher, an attorney and member of the defendant's board of directors; and Allen Bell, the defendant's attorney. Each of these officials stated they intended the agreements to be assignments of the defendant's interest to Ryan. The defendant never intended to have Ryan act as its agent,

and Ryan never did so. In his deposition, Ryan agreed that the parties intended to create an assignment and not an agency relationship. In return for the assignment, Ryan executed a note for $35,000. Ryan stated he never acted on behalf of the defendant, and the defendant had no control over him except to foreclose on his note. Ryan also testified he was never the plaintiff's employee. He and the plaintiff had agreed that Ryan would do the physical layouts for the papers for $15 a page. Ryan considered himself to be an independent contractor. In his deposition, the plaintiff stated he hired Ryan to manage his newspapers. He also stated neither Ryan nor the defendant ever told him that Ryan was the defendant's agent. The plaintiff also filed an affidavit of Linda Conover, one of his employees. She stated the plaintiff had hired Ryan to manage the newspapers. She had heard Ryan say that he and Wilkinson had made a deal and that he had obtained a power of attorney from the defendant. The trial court found no agency relationship had been created and granted summary judgment in the defendant's favor.

■■ Summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact, and that the movant is entitled to judgment as a matter of law. (*McBride v. Commercial Bank* (1981), 101 Ill. App. 3d 760, 764, 428 N.E.2d 739, 741.) While the nature and extent of an agency relationship are facts to be proved, these questions become one of law where the evidence is not disputed. *Wargel v. First National Bank* (1984), 121 Ill. App. 3d 730, 460 N.E.2d 331.

The plaintiff maintains that under the plain language of the agreements, the defendant gave Ryan a power of attorney. The plaintiff asserts the instruments must be construed as transferring legal title over the defendant's interest to Ryan as its agent but retaining beneficial interest in the defendant. Under the plaintiff's interpretation, the defendant merely appointed Ryan its agent for collection. The plaintiff's entire argument focuses on the phrase "appoint STEVE RYAN, our true and lawful attorney," contained in each of the instruments.

■■ Whether an agreement creates an agency relationship, at least insofar as a relationship affects a stranger to the agreement, depends upon the intent of the parties and the accompanying circumstances. The declaration of the parties in the agreement with respect to the nature of their relationship is not controlling, and, as with all other contracts, the writings must be considered as a whole. (*Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 413

N.E.2d 457.) The intent of the parties should not be gathered from detached portions of a contract or by reference to particular words or phrases. (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188, *cert. denied* (1978), 436 U.S. 925, 56 L. Ed. 2d 768, 98 S. Ct. 2818; *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.) The technical terms of an instrument do not determine its legal effect. *Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.

■ Considering the writings as a whole and the accompanying circumstances, we find the instruments were simply assignments of the defendant's interests. Each designates the defendant as assignor, and two of the three agreements state the defendant assigns "all right, title and interest." All three discuss valuable consideration received in return for the assignment. The interests are transferred to Ryan and "his heirs and assigns." In the instruments, the defendant appoints Ryan its true and lawful attorney, "irrevocable." Nothing in the instruments indicates the defendant would have control over Ryan. In their depositions, the defendant's attorneys stated the power of appointment language was included merely as a matter of historical significance. At one time, an assignee of a chose in action could not bring suit in his own name but could do so in the name of the assignor. *Allis-Chalmers Manufacturing Co. v. City of Chicago* (1921), 297 Ill. 444, 130 N.E. 736; *Brownell Improvement Co. v. Critchfield* (1902), 197 Ill. 61, 64 N.E. 332.

■ The plaintiff contends the agreements must at least be considered ambiguous and, therefore, they should be construed most strongly against the defendant because it authored the agreements. The rule which the plaintiff cites is simply one of construction. It is a secondary rule of interpretation, used only when all other interpretative guides have been exhausted. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 405 N.E.2d 1051.) The primary objective in construing a contract is to give effect to the intention of the parties. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.) Both parties to the instruments agree upon their intent.

■ ■ Furthermore, the plaintiff is not suing upon the agreements between the defendant and Ryan. A written contract is not conclusive of the relationship between the parties. Whether the legal relationship of principal and agent existed between the parties must be determined by an analysis of their actual practices and not merely by reference to the written agreement between them. (*Wargel v. First National Bank* (1984), 121 Ill. App. 3d 730, 460 N.E.2d 331; *Tansey v. Robinson* (1960), 24 Ill. App. 2d 227, 164 N.E.2d 272.) The

depositions of Ryan and the defendant's officers reveal no agency relationship existed between them. The plaintiff points to Conover's affidavit. It does not support the plaintiff's position. The defendant does not deny that it had a deal with Ryan, nor that the instruments contained the power of attorney language. Furthermore, when the existence of an agency relationship is at issue and the alleged principal is a party, mere statements of the agent made out of the presence of the principal and not later approved by him are not admissible to establish the existence of the agency. *Fredrich v. Wolf* (1943), 383 Ill. 638, 50 N.E.2d 755.

The plaintiff asserts that even if there was no principal-agent relationship between the defendant and Ryan, the trial court erred in granting summary judgment on his cause of action for interference with Ryan's contract of employment. He contends the critical relationship under this count is between himself and Ryan. The plaintiff initially raised this argument in his reply brief and, therefore, has waived the point. (103 Ill. 2d R. 341(e)(7).) Furthermore, the plaintiff alleged in his complaint that the defendant had interfered with Ryan's contract of employment by appointing him its agent. Finally, the plaintiff stated he had an oral agreement with Ryan to manage the newspapers. In the absence of an employment contract for a specific duration, the parties had a contract at will. (*Palmateer v. International Harvester Co.* (1980), 85 Ill. App. 3d 50, 406 N.E.2d 595.) A contract terminable at will is ordinarily not protected when the defendant's interference with it is based on any legitimate business purpose and no improper means are used. W. Prosser & W. Keeton, Torts sec. 129, at 996 (5th ed. 1984).

During discovery, plaintiff requested copies of all documents evidencing any business transaction between the defendant and Ryan and the defendant's financial statements for the last five years. The defendant refused the first request, contending the information was confidential. Banks may not disclose to any person any financial records of a customer unless the customer has authorized disclosure or the disclosure is in response to a lawful subpoena or court order. (Ill. Rev. Stat. 1983, ch. 17, pars. 360(c), 3449(c).) The defendant also refused to disclose its financial statements. The trial court, at a hearing on the plaintiff's motion to compel discovery, denied the motion. A trial court has broad discretion in ruling on matters involving discovery and its orders will not be interfered with on appeal absent an abuse of discretion. An affirmative showing of abuse must be made by the appellant. (*Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 443 N.E.2d 1125.) The record does not contain a transcript of the hearing,

nor does it reveal the trial court's reasons for denying discovery. Without a transcript, we have no basis for holding the trial court abused its discretion in denying the motion. *Libco Corp. v. Roland* (1981), 99 Ill. App. 3d 1140, 426 N.E.2d 309.

For these reasons, the order of the trial court granting summary judgment in the defendant's favor is affirmed.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.