**Frank LaSCOLA, Plaintiff,**

v.

**US SPRINT COMMUNICATIONS, Gary Nelson, Richard Smith and David Dorman, Defendants.**

**No. 87 C 1567.**

United States District Court, N.D. Illinois, E.D.

June 6, 1990.

Fox & Grove, Chartered, Jeffrey S. Goldman, Paul R. Garry, Allison C. Blakley, Chicago, Ill., for plaintiff.

Gregory J. Schroedter, Jeffrey A. Blevins, Charles G. Albert, Bell, Boyd & Lloyd, Chicago, Ill., Bernard A. Bianchino, US Sprint Communications, Kansas City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Defendants US Sprint Communications ("US Sprint"), Gary Nelson, Richard Smith and David Dorman have moved this court for entry of summary judgment in their favor. For the reasons stated in this memorandum opinion defendants' motion must be granted.

### I. BACKGROUND FACTS

The following facts are undisputed. Defendant US Sprint is a partnership engaged in the business of selling long distance telephone services, data transmission services, video teleconferencing services, and other telecommunications services. US Sprint is the successor in interest to a

company called ISACOMM and its corporate parent US Telecom.

US Sprint and its predecessors employed plaintiff Frank LaScola as a national account manager. During most of his employment Mr. LaScola reported to defendant Gary Nelson, regional manager of US Sprint's Great Lakes Region. Mr. Nelson reported to the director of US Sprint's central marketing area, who in turn reported to defendant David Dorman, senior vice president of US Sprint's National Accounts Division. Mr. Dorman's supervisor was defendant Richard Smith, president of US Sprint's National Accounts Division.

In 1984 Mr. LaScola was working for a company called American Satellite. That same year Mr. LaScola entered into discussions with employees of ISACOMM about the possibility of working for them. Officers of ISACOMM told Mr. LaScola that ISACOMM was an excellent company comprised of "a bunch of straight shooters" (i.e. fair people), that the company offered a lucrative compensation plan, and that the position presented potential for advancement. ISACOMM offered Mr. LaScola a job as a sales executive. He accepted the offer and began work on June 1, 1984.

Mr. LaScola worked for ISACOMM for over two years. During that time ISACOMM and its corporate parent, US Telecom, sought partners to help finance the construction of a national fiberoptic network. The result of this effort was creation of US Sprint. Mr. LaScola continued on with US Sprint in Chicago with the same job title, salary and responsibilities that he had at ISACOMM.

In late 1984 and early 1985 officers of ISACOMM began negotiations with officers of Sears, Roebuck & Company ("Sears") for the provision of telecommunications services. Sears had formed a new division called Sears Communications Network ("SCN") which had responsibility for all of the communications for Sears' various companies. As account manager for the Sears accounts in the Chicago area Mr. LaScola scheduled and played a key role in the negotiations with SCN.

On July 1, 1986 SCN executed an agreement to purchase telecommunications services from US Telecom at a special bulk rate. SCN requested and US Telecom agreed to keep this business relationship highly confidential. After execution of the SCN bulk services agreement Mr. LaScola was assigned solely to the Sears account and removed from his other accounts. Mr. LaScola was paid standard commissions for the sales of telecommunications products and services he made to Sears.

In September of 1986 US Sprint began work on a project for the design and sale of services to Electronic Data Services ("EDS"), the telecommunications arm of General Motors ("GM"). The project involved a significant business deal for US Sprint, and US Sprint and GM/EDS decided to keep all negotiations between them confidential.

On September 30, 1986 Mr. LaScola flew to Atlanta, Georgia for a meeting with various representatives of US Sprint and SCN. In the lobby of the hotel where he was staying Mr. LaScola met two US Sprint employees from the West Coast marketing region and suggested that they go to eat at a nearby public restaurant named Chequers Bar & Grill. During dinner in the crowded restaurant the parties mentioned both the GM/EDS account and also the Sears account. Several US Sprint executives sitting at another table in the restaurant testified that they overheard Mr. LaScola make comments about the GM/EDS and Sears accounts.

Two of the executives related to Mr. Smith and Mr. Dorman what they had heard. Mr. Smith asked Mr. Dorman to look into the situation. Later it was decided that Mr. LaScola should be terminated. On October 8, 1986 Mary Elzy, US Sprint's Human Resources Director, and Mr. Nelson flew to Chicago and told Mr. LaScola that he had been overheard revealing confidential company information. They then fired him.

After Mr. LaScola's termination Mr. Nelson telephoned Richard Elter of SCN and informed him that Mr. LaScola no longer would be assigned to the Sears account.

Mr. Nelson told Mr. Elter that Mr. LaScola had been fired for disclosure of what was considered confidential information.

Mr. LaScola denies that he disclosed confidential information at the Chequers restaurant. He contends that he was fired because US Sprint did not want to pay him future commissions on the Sears account.

In November of 1986 Mr. LaScola began employment with MCI Communications, Inc., one of US Sprint's competitors. Three months later he filed his original complaint in this case.

Mr. LaScola's present, first amended complaint has five counts. In Count I Mr. LaScola alleges that US Sprint breached a covenant of good faith and fair dealing by firing him. Count II avers that US Sprint defamed Mr. LaScola by divulging that he had disclosed confidential information. Mr. LaScola brings Count III against defendants Smith, Dorman, and Nelson for intentional interference with Mr. LaScola's contractual relationship with US Sprint. Mr. LaScola asserts Count IV against US Sprint for certain alleged fraudulent misrepresentations made to him before and during his employment at US Sprint. And Count V is for breach of Mr. LaScola's employment contract with US Sprint.

## II. DISCUSSION

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■ However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party must do more than simply "show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.,* 475 U.S. at 587, 106 S.Ct. at 1356.

Applying these standards defendants' motion for summary judgment must be granted. The court shall address in turn Mr. LaScola's claims for breach of contract, defamation, fraud, and tortious interference with contract.

### A. *Breach of Employment Contract*

Count V of Mr. LaScola's first amended complaint alleges that defendants breached Mr. LaScola's employment agreement with US Sprint by firing him without cause. Count I avers that US Sprint breached a covenant of good faith and fair dealing. Neither claim is legally or factually sufficient.

#### 1. Employee–At–Will Status

■ Summary judgment must be entered against Mr. LaScola on Count V, his breach of contract claim, because Mr. LaScola was an employee-at-will and thus could be terminated at will—without cause.

■ Under Illinois law a contract with no definite term is terminable at will.[1] There are three exceptions to this general

---

1. Because both Illinois and Georgia have contacts with all or most of the diversity claims made here, there is some dispute as to which state's law applies. Defendants argue that summary judgment in their favor is proper regardless of which state's law applies. Mr. LaScola insists that Illinois law applies. Because plaintiff ignores Georgia law altogether, this court finds that they have waived any argument that Georgia law would provide a different result in this case. Thus, the court will apply Illinois law. *Runnemede Owners, Inc. v. Crest Mortgage Corp.,* 861 F.2d 1053, 1056 (7th Cir.1988).

rule: (1) when an employee's firing contravenes public policy; (2) when an employee is terminated in violation of particular conditions stated by the parties; and (3) under certain circumstances when there has been a clear and definite oral agreement for permanent employment. *Gordon v. Matthew Bender & Co., Inc.*, 562 F.Supp. 1286, 1294–95 (N.D.Ill.1983). An employer may discharge an employee-at-will for any reason or for no reasons, except when the discharge violates a clearly mandated public policy. *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 478 N.E.2d 1354, 1356 (1985).

█ Mr. LaScola does not contend that his employment contract was for a definite term, but rather admits in his complaint that he was employed "for an indefinite period." (First Amended Complaint ¶ 57.) This admission creates a presumption that Mr. LaScola was hired as an employee-at-will—a presumption which can be overcome only by demonstrating that he and US Sprint contracted otherwise. *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987).

█ In arguing that Mr. LaScola has not overcome this presumption the defendants make much of the provisions of US Sprint's Employee Handbook. However, the court finds US Sprint's Handbook irrelevant to the issue of Mr. LaScola's employment status.

The last page of the Handbook contains the following message:

### LEGAL NOTICE

The purpose of this handbook is to describe policies, procedures, and practices currently in effect at US Sprint. Nothing in this handbook is to be construed as making a binding contract or promise of any kind. The company remains free to change at any time any terms contained herein without having to consult with or obtain agreement from anyone. *US Sprint reserves the absolute right to establish and to change employees' wages, hours, benefits and working conditions, and to discipline or discharge*

*any employee with or without just cause and with or without notice.* US Sprint retains, without limitation or reservation, all rights, powers and authority customarily exercised by management. (Def.Ex. 4 at 18 (emphasis added).)

Defendants contend that the highlighted language demonstrates that Mr. LaScola was an employee-at-will. Mr. LaScola argues that the handbook does not bind him because he received it after he began his employment at US Sprint. Mr. LaScola is correct that he is not contractually bound by the provisions of the Handbook, but for a different reason.

By its own language the Handbook makes clear that it cannot "be construed as making a binding contract or promise of any kind." Therefore, the Handbook does not affect Mr. LaScola's employment status one way or the other. It demonstrates neither that he is an employee-at-will nor that he is terminable only for cause. What counts is the intentions of the parties to Mr. LaScola's employment contract, not an employee handbook which expressly does not alter prior agreements. *See Duldulao*, 106 Ill.Dec. at 12, 505 N.E.2d at 318. Therefore, this court's inquiry remains whether Mr. LaScola was an employee-at-will when he was fired by US Sprint.

Mr. LaScola points to certain representations that he says US Sprint made to him and which "rebut any presumption of at-will status under the circumstances." (Plaintiff's Response Mem. at 14.) In particular, Mr. LaScola cites "Sprint's written and oral statements to [him] that Sprint had a lucrative compensation plan, that Sprint was committed to conducting business in accordance with the law and the highest ethical and moral standards, and that Sprint cared about its employees." (*Id.*) Mr. LaScola also relies upon statements made to him when he was being solicited for employment that US Sprint personnel are "straight shooters"—that they play fair. (*Id.*)

However, none of these representations contain the sort of clear and definite language required for finding a contract for permanent employment. *See, e.g., Koch v.*

*Illinois Power Co.*, 175 Ill.App.3d 248, 124 Ill.Dec. 461, 464, 529 N.E.2d 281, 284 (3d Dist.1988). A statement that a company has a lucrative compensation plan does not imply that an employee under that plan can be fired only for cause. A comment that a company is committed to conducting business in accordance with the law and the highest ethical and moral standards in no way diminishes an employer's ability to fire an at-will employee for no reason, provided the discharge violates no clearly mandated public policy. And a declaration that a company "cares" about its employees and is composed of employees who "play fair" is not a promise only to fire an employee "with care" or "in fairness."

Because there is no genuine dispute as to the facts surrounding Mr. LaScola's employment contract this court finds as a matter of law that when Mr. LaScola was fired from US Sprint he was an employee-at-will.[2] *Cf. Bank of Benton v. Cogdill*, 118 Ill.App.3d 280, 73 Ill.Dec. 871, 876, 454 N.E.2d 1120, 1125 (5th Dist.1983).

As already noted, unless a discharge violates a clearly mandated public policy an employer may discharge an employee-at-will for any reason or for no reasons. *Barr v. Kelso–Burnett Co.*, 88 Ill.Dec. at 630, 478 N.E.2d at 1356. Mr. LaScola has not alleged and has presented no evidence that his firing violated a clearly mandated public policy. Therefore, summary judgment must be entered against him on Count V.[3]

### 2. Implied Covenant of Good Faith and Fair Dealing

Summary judgment also must be entered in defendants' favor on Count I of Mr. LaScola's first amended complaint.

■ In Count I Mr. LaScola claims that US Sprint breached a covenant of good faith and fair dealing by terminating him. However, while the duty of good faith and fair dealing is included in every contract as a matter of law, this duty does not create an independent cause of action. *Gordon v. Matthew Bender & Co., Inc.*, 562 F.Supp. 1286, 1289–90 (N.D.Ill.1983); *Hugo v. Tomaszewski*, 155 Ill.App.3d 906, 108 Ill.Dec. 562, 565, 508 N.E.2d 1139, 1142 (5th Dist. 1987); *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 929–31 (N.D.Ill.1985).

■ In an attempt to save Count I Mr. LaScola asserts that Illinois' "procuring cause" rule—which states that a sales agent employed on a commission basis is generally entitled to a commission when he or she procures a customer's order—affords him an independent basis for his contract claims. However, the procuring cause rule applies only if an agent's employment contract does not expressly provide for when commissions will be paid. *Technical Representatives v. Richardson–*

---

**2.** Mr. LaScola also asserts that US Sprint's policy of "treating employees fairly ... required that progressive discipline be followed for remediable performance deficiencies (PSF #2) and that a thorough investigation be conducted prior to [his] discharge." (Plaintiff's Response Mem. at 14.) However, the deposition testimony which Mr. LaScola cites does not in fact support this assertion. On the contrary, the testimony establishes only that US Telecom, US Sprint's predecessor, "attempted to treat people fairly" and that US Sprint's human resources director Mary Elzy "[would] consider it part of a policy of treating people fairly that employees should be alerted when their performance was deficient in some respect." (Elzy Dep. at 27.) These statements do not indicate that US Sprint had any sort of progressive discipline policy, and in no way demonstrate that Mr. LaScola could be fired only for cause.

Moreover, Ms. Elzy warned:

Situations vary, based on their severity and the climate, the particular aspects of a situation. For the most part [if the problem that an employee was having was something that could be fixed or worked on, something that was remediable, that sort of problem should not result in termination without an opportunity to improve,] but there are some situations that are flagrant enough in a performance area that are deemed in and of themselves serious enough where some action can be taken on those events.

(*Id.* at 27–28.) No reasonable factfinder could conclude from Ms. Elzy's testimony or any other testimony cited by Mr. LaScola that US Sprint had a progressive discipline policy or that Mr. LaScola could be fired only for cause.

**3.** Because this court finds as a matter of law that the pre-employment representations made to Mr. LaScola did not create a relationship of permanent employment, the court need not address the statute of frauds and lack of consideration issues raised by defendants in their memoranda.

*Merrell, Inc.*, 107 Ill.App.3d 830, 63 Ill.Dec. 668, 671, 438 N.E.2d 599, 602 (1st Dist. 1982).

It is undisputed that Mr. LaScola received his commissions under a compensation plan which expressly governed when commissions were to be paid to him. (12(*l*) Statement[4] at ¶¶ 34–39, 67–68; Def.Ex. 3.) Moreover, US Sprint's compensation plan expressly stated:

An employee who voluntarily or involuntarily terminates shall be paid for commission payments documented and due as of the date of termination according to this Plan. A terminated employee will not be eligible for any remaining balance of commissions related to any account.

(Def.Ex. 3 p. 12, ¶ E.) Therefore, under the compensation agreement, after termination Mr. LaScola was entitled to no commissions based upon his prior efforts on the Sears account.

Because Mr. LaScola's contract with US Sprint expressly governed his receipt of commissions (and because Mr. LaScola does not allege that US Sprint failed to pay him commissions under the compensation plan, see 12(*l*) Statement ¶ 68) the procuring cause rule is inapplicable here.

Therefore, summary judgment must be entered in defendants' favor on Count I.

B. *Count II: Defamation by US Sprint*

■ The defendants also are entitled to entry of summary judgment on Count II of the first amended complaint—Mr. LaScola's defamation claim.

In support of his defamation claim Mr. LaScola relies upon a single statement allegedly made by Mr. Nelson to Richard Elter, an employee of SCN. Mr. LaScola presents the following deposition testimony of Mr. Elter:

Q. Can you please tell me what it was that you and [defendant Gary] Nelson discussed over the telephone as it related to the termination or the

reason why Mr. LaScola left the employment of Sprint?

A. Yes. Gary Nelson called me and he told me the purpose of the call was to inform me that Frank LaScola was being terminated by US Sprint as a result of, what as he termed it, improprieties he felt took place as a result of some discussions overheard at a local cocktail lounge dealing with disclosure of what was considered confidential information.

Q. Was anything else said during that telephone conversation?

A. That's the extent of the conversation, that I can recall.

(Elter Dep. at 48–49.) However, Mr. Nelson's alleged statement is not actionable because it was privileged.

Under Illinois law Mr. Nelson's statement is entitled to protection of a qualified privilege if the defendants show the following:

(1) that Mr. Nelson acted in good faith;

(2) that Mr. Nelson had an interest or duty to uphold in making the statement to Mr. Elter;

(3) that the statement was limited in its scope to that purpose;

(4) that Mr. Nelson made the statement at the proper occasion; and

(5) that the statement was made in a proper manner and to proper parties only.

*Dark v. U.S. Fidelity & Guaranty Co.*, 175 Ill.App.3d 26, 124 Ill.Dec. 681, 688, 529 N.E.2d 662, 669 (1st Dist.1988). The determination of whether an allegedly defamatory statement is protected by a privilege is a question of law for the court. *Id.*

Mr. LaScola does not argue (and presents no evidence) of any of the following: (1) that Mr. Nelson acted in bad faith; (2) that Mr. Nelson did not have an interest in making his statement to Mr. Elter; (3) that Mr. Nelson made the statement at an improper occasion; or (4) that Mr. Nelson made the statement in an improper manner

---

4. "12(*l*) Statement" refers to defendants' statement of uncontested facts in support of their motion for summary judgment. *See* Local Rule 12(*l*) of the General Rules for the United States District Court for the Northern District of Illinois.

or to an improper party.[5] (Plaintiff's Response Mem. at 30–31.) In his one paragraph response to defendants' assertion of the qualified privilege Mr. LaScola argues only that Mr. Nelson's statement was not properly limited in scope to its purpose, as "[t]he alleged reason for LaScola's termination was of no consequence to Sears." (*Id.* at 31.) As a matter of law, however, Mr. Nelson's alleged statement as to why Frank LaScola was being terminated does not exceed the proper scope of the qualified privilege.

As defendants correctly note, SCN had an interest in knowing not only that a personnel change was to be made on their account, but also the reason for that change—that Mr. LaScola had disclosed what was considered confidential information. As defendants correctly argue, it is clear that the reason for the personnel change could bear upon the nature of the past services SCN received from US Sprint, especially given that Sears itself had requested that US Sprint keep its business relationship with SCN "highly confidential." (12(*l*) Statement at ¶ 57.) Therefore, this court finds that Mr. Nelson's statement to Mr. Elter did not exceed the proper scope of its purpose. *Cf. Rayco Manufacturing Co. v. Dunn*, 234 F.Supp. 593, 601 (N.D.Ill.1964). It was conditionally privileged.

However, as Mr. LaScola notes the qualified privilege is not absolute. Under Illinois law it may be lost if Mr. LaScola proves that Mr. Nelson abused it—that Mr. Nelson acted with actual or express malice. *Babb v. Minder*, 806 F.2d 749, 754 (7th Cir.1986). To prove actual or express malice Mr. LaScola must establish that Mr. Nelson "[did] not believe in the truth of the defamatory matter, or [had] no reasonable grounds for believing it to be true." *Dark*, 124 Ill.Dec. at 689, 529 N.E.2d at 670, *quoting Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill.2d 345, 350, 243 N.E.2d 217 (1968).

In attempting to make this requisite showing Mr. LaScola argues only that US Sprint failed to properly investigate his alleged disclosure of confidential information. (Plaintiff's Response Mem. at 31.) However, Mr. LaScola invites this court's attention to no evidence calling into question the undisputed fact that Mr. Nelson *did* indeed investigate Mr. LaScola's alleged disclosure of confidential information before speaking with Mr. Elter. For example, it is undisputed that before speaking with Mr. Elter, Mr. Nelson telephoned Bill McCullough, who was in the restaurant with Mr. LaScola, and verified that Mr. LaScola had disclosed confidential information. (12(*l*) Statement at ¶ 95.)

Therefore, because Mr. LaScola has raised no genuine issue of material fact that Mr. Nelson acted with actual or express malice in making the alleged defamatory statement to Mr. Elter, Mr. Nelson's statement was privileged. Summary judgment must be granted in defendants' favor on Count II of Mr. LaScola's first amended complaint.

### C. *Count IV: Fraud by US Sprint*

Summary judgment also must be entered in defendants' favor on Mr. LaScola's fraud claim, Count IV of the first amended complaint.

To prevail on his claim of fraud at trial Mr. LaScola must establish by clear and convincing evidence the following six elements concerning the alleged fraudulent misrepresentation:

---

**5.** Indeed, given the undisputed facts of this case, Mr. LaScola could not plausibly make these arguments. Mr. Nelson's statement in and of itself did not evidence bad faith. Moreover, Mr. LaScola has offered no evidence impugning the good faith of Mr. Nelson, a US Sprint regional manager assigned to the SCN account, talking at the time to Mr. Elter, Communications Director in SCN's Voice Department and involved with SCN's contract with US Sprint. There can be no real dispute that Mr. Nelson had an interest in informing SCN about US Sprint's change of account managers and that SCN had a similar interest in learning that information. Moreover, there is no evidence challenging the propriety of the brief person-to-person telephone call used by Mr. Nelson to apprise Mr. Elter of US Sprint's change in personnel. *Cf. Babb v. Minder*, 806 F.2d 749, 754 (7th Cir.1986).

(1) the representation must be a statement of a material fact, rather than a mere promise or opinion;

(2) the representation must be false;

(3) the person making the statement must know or believe that the representation is false;

(4) the person to whom the representation is made must reasonably rely on the truth of the statement;

(5) the statement must have been made for the purpose of causing the other party to affirmatively act; and

(6) the reliance by the person to whom the statement was made must have led to his injury.

*Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1347 (7th Cir.1983); *Charles Hester Enterprises, Inc. v. Illinois,* 114 Ill.2d 278, 102 Ill.Dec. 306, 310, 499 N.E.2d 1319, 1323 (1986). However, no reasonable factfinder could find for Mr. LaScola on (at least) the first and fifth of these six required elements.

 Mr. LaScola cannot establish the first required element because the representations made to him were mere promises or opinions, not statements of material fact. For example, Mr. LaScola states that in order to induce him to accept a job with US Sprint certain of US Sprint's executives and managers told him that US Sprint had a "very lucrative [compensation] plan. It's a great company to be with. We are all pros—'Straight shooters'.... [US Sprint employees] play fair. You sell it, you get your money, along with potential for advancement." (LaScola Dep. at 97.)

However, these comments are too indefinite and unverifiable to be statements of fact. How does one prove whether an employee compensation plan is "very lucrative," or whether someone is a "straight shooter"? Given the undisputed circumstances in which they were spoken—made by US Sprint employees to persuade Mr. LaScola to join US Sprint—these comments are merely statements of opinion. *See, e.g., Spiegel v. Sharp Electronics Corp.,* 125 Ill.App.3d 897, 81 Ill.Dec. 238, 242, 466 N.E.2d 1040, 1044 (1st Dist.1984). As such, they are not actionable fraud in Illinois.[6]

 Similarly, there is no genuine issue of material fact that statements allegedly made to Mr. LaScola while he was working for US Sprint are not sufficient to support his fraud claim. For example, Mr. LaScola testified that in transferring him from an Arthur Anderson account to the Sears account Mr. Nelson told him "not to worry about the commission dollars at Arthur Anderson, that [is] going to be nothing compared to what [you are] going to make at Sears, so just give that away." (LaScola Dep. at 272.) In the same conversation Mr. Nelson allegedly stated, "Forget about [the commissions from Arthur Anderson]. It's chicken feed compared to what you are going to make on Sears." (*Id.* at 273.)

After his deposition and in response to defendants' motion for summary judgment Mr. LaScola submitted an affidavit adding further allegations. Mr. LaScola now avers that Mr. Nelson also told him that his commissions on the Sears account would amount to "several hundred thousand dollars" for 1986. (LaScola Aff. ¶ 8.)

This court has some concern about Mr. LaScola's post-motion attempt to supplement, without explanation, his seemingly complete deposition testimony. *See Richardson v. Bonds,* 860 F.2d 1427, 1433 (7th Cir.1988) (contrary affidavit testimony not allowed). However, the court need not address whether the supplementary allegation of Mr. LaScola's affidavit should be

---

6. Citing *West v. Western Casualty and Surety Co.,* 846 F.2d 387 (7th Cir.1988), Mr. LaScola argues that even as statements of opinion these comments are actionable because his superiors possessed "superior information." However, the statements in this case are vastly less definite and verifiable than the representations made in *West. See id.* at 394. Moreover, Mr. LaScola has presented no evidence supporting his claim that the US Sprint employees with whom he spoke possessed the sort of "superior information" to make the statements of opinion that he alleges actionable. *See also, Duhl v. Nash Realty, Inc.,* 102 Ill.App.3d 483, 57 Ill.Dec. 904, 909–10, 429 N.E.2d 1267, 1272–73 (1st Dist. 1981).

considered. Even if it is, Mr. Nelson's alleged representations are opinions or predictions of future performance, not statements of fact, and as such cannot constitute fraud in Illinois.[7] *See, e.g., Madison Associates v. Bass,* 158 Ill.App.3d 526, 110 Ill.Dec. 513, 522, 511 N.E.2d 690, 699 (1st Dist.1987).

There also is no genuine issue of material fact that Mr. Nelson's alleged statements do not satisfy the fifth requirement for a fraud claim—that the statement be made for the purpose of causing the other party to affirmatively act. Under its compensation plan with Mr. LaScola US Sprint had the right to transfer Mr. LaScola from one account to another without prior notice in an attempt to provide incentives for future activity on an account.[8] (12(*l*) Statement at ¶ 37; Def.Ex. 2.)

Thus, US Sprint did not need Mr. LaScola's acquiescence in transferring him to a different account. Consequently, Mr. Nelson's prediction of Mr. LaScola's future earnings on the Sears account could not have been made for the purpose of causing Mr. LaScola to transfer accounts, but rather for the purpose of making Mr. LaScola's inevitable transfer more palatable.

After believing all of the evidence presented by Mr. LaScola and drawing all justifiable inferences in his favor it is nonetheless clear that Mr. LaScola cannot prove all of the required elements of his fraud claim. Therefore, summary judgment must be entered against him on Count IV of his first amended complaint as well.

### D. Count III: Tortious Interference with Mr. LaScola's Contractual Relationship by Defendants Smith, Dorman and Nelson

██ Count III of Mr. LaScola's first amended complaint alleges that defendants Smith, Dorman, and Nelson, officers of US Sprint, tortiously interfered with his contract for employment at US Sprint.

In Illinois to prevail on a claim for tortious interference with contract Mr. LaScola must prove: (1) that he had a valid and enforceable contract with US Sprint; (2) that the named defendants knew of the existence of this contract; (3) that the named defendants induced US Sprint to breach the contract; (4) that US Sprint breached the contract; and (5) that the breach resulted in the damages complained of. *Fishman v. Estate of Wirtz,* 807 F.2d 520, 545 (7th Cir.1986).

Mr. LaScola cannot prove the fourth required element of his claim—that US Sprint breached his employment contract. As already held by this court, Mr. LaScola was an employee-at-will when US Sprint terminated him. Therefore, he could be fired for any reason or for no reason at all. *Barr,* 88 Ill.Dec. at 630, 478 N.E.2d at 1356.

In Illinois, though, as a matter of law the inducement of the cancellation of an at-will contract in circumstances such as those indisputably present here does not constitute interference with contractual relations. *See Prudential Insurance Co. of America v. Sipula,* 776 F.2d 157, 162 (7th Cir.1985); *Galinski v. Kessler,* 134 Ill.App.3d 602, 89 Ill.Dec. 433, 438, 480 N.E.2d 1176, 1182 (1st Dist.1985); *Pinsker v. Kansas State Bank,*

---

**7.** Citing *General Motors Acceptance Corp. v. Central National Bank,* 773 F.2d 771 (7th Cir.1985) ("*GMAC*"), Mr. LaScola argues in his responsive memorandum that defendants engaged in a scheme to defraud and thus Mr. Nelson's prediction of what he could earn on the Sears account in 1986 is actionable. (Plaintiff's Response Mem. at 33 n. 30.) In support of this argument Mr. LaScola argues merely that "more than one person made numerous misrepresentations to LaScola...." (*Id.*)

However, the statement of opinion or prediction of future events in *GMAC* was part of a series of several misrepresentations *of fact* made by the defendant there. *See GMAC,* 773 F.2d at 775–777, 780. In contrast, employees of

US Sprint made *no* misrepresentations of fact. At best, Mr. LaScola presents evidence only of a few, predominately indefinite and unverifiable statements of opinion or predictions of future earnings. This evidence creates no *genuine* issue of material fact that US Sprint engaged in a scheme to defraud him. Thus, the misrepresentations alleged in Count IV are not actionable. *Madison Associates v. Bass,* 158 Ill.App.3d 526, 110 Ill.Dec. 513, 522–23, 511 N.E.2d 690, 699–700 (1st Dist.1987).

**8.** The actual language of the compensation agreement states that "the intent of such changes will be to incent [sic] future activity." (*See, e.g.,* Def.Ex. 2.)

142 Ill.App.3d 216, 96 Ill.Dec. 547, 550–51, 491 N.E.2d 826, 829–830 (4th Dist.1986).

Therefore, summary judgment must be entered in defendants' favor on Count III, the last remaining count of Mr. LaScola's first amended complaint.[9]

## III. CONCLUSION

For the reasons stated in this memorandum opinion and order this court finds that there is insufficient evidence favoring Mr. LaScola for a jury to return a verdict for him on any of the counts of his first amended complaint. Therefore, summary judgment is entered in defendants' favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. This case is dismissed in its entirety.

---

**9.** Entry of summary judgment on Count III is proper for another reason as well. Because the named defendants were officers of US Sprint, Mr. LaScola can prevail on his claim for intentional interference with contract only if he can prove that they "induced the breach to further their personal goals or to injury [him], *and* acted contrary to the best interest of [US Sprint]." *George A. Fuller Co. v. Chicago College*

*of Osteopathic Medicine,* 719 F.2d 1326, 1333 (7th Cir.1983) (emphasis in original); *see also Brown v. Keystone Consolidated Industries, Inc.,* 680 F.Supp. 1212, 1223 n. 7 (N.D.Ill.1988). Mr. LaScola has raised no genuine issue of material fact that through their actions the named defendants acted contrary to the best interest of US Sprint.